JOHNSON *v.* NEWMAN.

Opinion delivered May 11, 1925.

1. HIGHWAYS—HUSBAND'S LIABILITY FOR WIFE'S NEGLIGENCE IN DRIVING CAR.—Evidence *held* to make it a question for the jury whether a defendant was negligent in failing to exercise control over his wife who, in driving his automobile, attempted to pass another car at high speed, as the latter was moving toward the center of the road to pass a bus in front of it.

2. MASTER AND SERVANT—HUSBAND'S RESPONSIBILITY FOR WIFE'S NEGLIGENCE.—Evidence *held* sufficient to go to the jury on the issue of the husband's responsibility for his wife's negligence in attempting to drive an automobile occupied by him past a car in front on the theory that she was acting as his agent.

3. MASTER AND SERVANT—RESPONDEAT SUPERIOR DOCTRINE.—While the "family purpose" and imputed negligence doctrines and the husband's common-law liability for his wife's torts are not recognized in Arkansas, the doctrine of *respondeat superior* still obtains, so that one permitting his wife or another to drive his car while occupied by him is responsible for negligence of such driver as his agent.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; reversed.

*Gray, Burrow & McDonnell,* for appellants.

*A. J. Newman* and *W. R. Donham,* for appellee.

McCULLOCH, C. J.   The three appellants instituted separate actions against appellee to recover damages on account of a collision of automobiles, alleged to have been caused by negligence on the part of appellee. Appellee denied the charge of negligence, and the three cases were consolidated by consent and tried before a jury, but the court directed a verdict in favor of appellee. The question presented on this appeal is whether or not the evidence was legally sufficient to call for a submission of the issues to the jury.

The collision occurred during the afternoon of a certain Sunday in the month of July, 1923. It occurred a few miles east of the city of Little Rock, on an asphaltum road, eighteen feet wide, with dirt shoulders on each side about three feet in width. Both automo-

biles were going in the same direction—towards the east. The car in which appellants were riding was in front, and, at the time of the collision, appellee's car was attempting to pass the other one.

The three appellants, Mrs. J. C. Johnson and her daughter, Mrs. Holton, and O. Anderson, a friend or acquaintance, were riding in the same car, a Ford coupe, owned by Anderson. Mrs. Holton was on the left side of the car, driving, and Anderson was sitting next to her, in the center, and Mrs. Johnson was sitting on the right-hand side, holding in her lap the three-year-old child of Mrs. Holton. The car was constructed to seat two passengers, but there is a conflict in the testimony as to whether or not three persons could ride without crowding the driver and interfering with the operation of the brakes and gear-shift.

Appellee Newman and his wife were riding in a Ford coupe, owned by appellee, and Mrs. Newman was doing the driving. The testimony of each of the appellants is to the effect that they were going along at a speed of about twelve to fifteen miles an hour, and, as they approached a motor bus standing on the right-hand side of the road, they turned the car to the left and into the center of the road in order to pass the bus, and that, as they did so, appellee's car dashed by at a high rate of speed and struck the front hub-cap and the fender of the car of appellants with the rear wheel of appellee's car with such violence that the driver of the car of appellants lost control of the steering-wheel, and the car turned to the right at an angle and ran into a ditch, without fault on the part of the driver. The car turned over in the ditch, and each of the appellants received, in consequence, very serious personal injuries. Mrs. Johnson and Anderson both sustained bone fractures, and there was evidence to show that their injuries were not only very severe and painful, but permanent. Mrs. Holton's injuries, according to the testimony, were not permanent, but were substantial and painful.

The bus was, according to the undisputed evidence, stopped on the side of the road for tire repairs, and each of the appellants testified that, when their car got within about twenty feet of the rear of the bus, the driver, Mrs. Holton, turned out to the left, and got about the center of the road, perhaps the left wheel being slightly over the center, and that the front end of the car was within five or ten feet of the rear end of the bus when the collision occurred. They testified that they heard no signal from appellee's car as it approached from the rear, and that they did not see the car until it came alongside of their car and struck the front wheel. They stated that the car struck with a terrific impact and made a great noise, and that the force was sufficient to break open the right-hand door of the car in which they were riding. The evidence of another witness tends to show that the impact was very severe, from the fact that the hub-cap on the car was mashed in against the end of the axle. The narratives of appellee and his wife coincide with each other, but they are in direct conflict with the testimony given by appellants. They testified that they were in a line of cars, going at a very moderate rate of speed, and that many of the cars were passing each other, and that, as they approached the motor bus standing on the side of the road, which they observed ahead of them, they speeded up slightly for the purpose of passing the car in which appellants were riding and two others, and that, just as they went to pass appellants' car, the driver thereof suddenly veered the car to the left and ran into appellee's car, striking the rear wheel with the front wheel of appellants' car. They testified that the collision occurred forty to fifty feet behind the motor bus, and that the impact was so slight that it was hardly noticeable, and that they did not discover that any injury had resulted until they had traveled a distance of about half a block in front of the bus. They testified that, when they started to pass the cars in front, appellee began sounding the horn, and continued to do so until

after they had passed. Appellee stated in a very emphatic way that he was "playing a tune" on the horn, meaning that he was honking it constantly. He testified that, when he noticed appellant's car turning out into the road, he cried out to his wife, "Look out for this car," and that she cut her car around to the left, which was on the extreme left-hand side of the road; that, when the two cars struck, Mrs. Newman asked, "Did I do any harm?" and that he (appellee) replied, "No, everything is all right." He testified that no signals were given from appellants' car, and appellants themselves admitted that they gave no signal. Appellee testified that, after the collision, he looked back and saw that apparently there was nothing wrong with the car with which they had collided, but that, when they got about half a block in front of the bus, he looked back again and saw the car of appellants turning around the bus and saw it run into the ditch.

Now, it is apparent from this recital of the testimony in the case that there was a sharp conflict on material points, and that it showed negligence on the part of one side or the other of this controversy. The jury might have found in favor of either party on this issue, but it was a question for the jury, as the evidence was legally sufficient to support a verdict either way. The issue should not have been taken away from the jury by a peremptory instruction.

In the first place, the evidence was sufficient to show that appellee was guilty of negligence himself in failing to exercise control over the driver in order to prevent the collision. *Minor* v. *Mapes,* 102 Ark. 351; *Carter* v. *Brown,* 136 Ark. 23; *Pine Bluff Co.* v. *Whitlaw,* 147 Ark. 152; *Wisconsin & Arkansas Lbr. Co.* v. *Brady,* 157 Ark. 449. Appellant was not only sitting in the car beside the driver, where he could observe everything that occurred, but, according to his own statement, he was actually participating in the operation of the car by giving directions to his wife and by giving signals. He appears to

have been, for all practical purposes, as much in control of the car as was his wife, who was doing the driving. He admits that he saw the bus standing on the side of the road, and if, as testified by appellants, they were moving out into the center of the road for the purpose of passing the bus, the jury would have been justified in finding that appellee and his wife were negligent in attempting to pass at that moment. The evidence adduced by appellants, if accepted. by the jury, was sufficient to show that they were out in the middle of the road, perhaps a little to the left of the middle of the road, in the very act of passing the bus, when appellee undertook to pass at a rapid rate of speed.

Appellants were entitled to a submission of the issues as to liability on the theory that appellee himself participated in the act of negligence which caused the collision.

In the next place, we are of the opinion that there was sufficient evidence to justify a submission of the issue of appellee's responsibility on the theory that his wife, while driving the car, was acting as his agent. This court has refused to accept the so-called "family purpose" doctrine as a basis of liability on account of automobile collisions. *Norton* v. *Hall*, 149 Ark. 428; *Volentine* v. *Wyatt*, 164 Ark. 172. We have also discarded the doctrine of imputed negligence (*Carter* v. *Brown, supra; Miller* v. *Fort Smith Light & Traction Co.*, 136 Ark. 272; *Pine Bluff Co.* v. *Whitlaw, supra; Itzkowitz* v. *P. H. Ruebel & Co.*, 158 Ark. 454), and the common-law liability of the husband for torts of the wife has been eliminated by statute (*Bourland* v. *Baker*, 141 Ark. 280), but we have not departed from the elemental principles of the law of agency in determining the question of liability for automobile accidents. The doctrine of *respondeat superior* still obtains. In *Norton* v. *Hall, supra,* we said: "In other words, we reject the so-called 'family purpose' doctrine as stated by some of the courts in its broadest sense, though we do not mean

to hold that there may not be circumstances under which it would be a question of fact for the jury to determine whether the person so operating the car was the agent of the head of the family or was agent of the particular member or members of the family for whose pleasure and benefit the car was then used." In *Wisconsin & Arkansas Lumber Co.* v. *Brady, supra,* we held that the husband, who was riding in his own car which his wife was driving, was responsible for the negligence of his wife on the theory that she was, under those circumstances, acting as his agent in the operation of the car. Why shouldn't the doctrine of *respondeat superior* apply under such circumstances? If the owner of a car in which he is riding permits some other person to operate it—no matter whether it is his wife or child or friend—there is no reason why the relation of principal and agent should not be held to be subsisting between them so as to make the owner, as the principal, responsible for the negligent act of the driver as his agent. The question merely involves the application of elemental principles of law on this subject, and we are of the opinion that the testimony in the case is sufficient to call for a submission of the issue as to liability of appellee on account of the negligence of his wife as his agent, as well as his own negligence in controlling or failing to control the operation of the car. Of course, we express no opinion on the weight of the evidence further than to say that it is legally sufficient to justify a submission of the issues in regard to negligence.

For the error in taking the case away from the jury the judgment is reversed, and the cause remanded for a new trial.

WOOD and HART, JJ., dissent.