TOM F. NELSON V. C. P. FULKERSON

No. A-5115. Decided January 25, 1956
(286 S.W. 2d Series 129)

*Richard F. Stovall and Enos T. Jones,* both of Floydada, for petitioners.

*Cade & Bowlin* and *James O. Cade,* all of Lubbock, for respondent.

MR. JUSTICE BREWSTER delivered the opinion of the Court.
This is a suit for damages for personal injuries sustained by plaintiff, Tom Nelson, when an automobile driven by his minor son, Gene, collided with an automobile with trailer attached driven by C. P. Fulkerson, defendant.

Fulkerson pleaded a cross-action against both Nelsons for damages for injuries alleged to have been suffered by him in the collision. Gene Nelson filed a cross-action against Fulkerson for injuries sustained by him.

After a jury verdict on special issues, the trial court denied both Tom Nelson and Gene Nelson any relief against Fulkerson, and Fulkerson any relief against the Nelsons.

Upon appeal of Tom Nelson the Court of Civil Appeals reversed and remanded the cause. 277 S.W. 2d 286.

Both Fulkerson and Tom Nelson filed applications. Gene Nelson filed none. We granted Fulkerson's because we were of the tentative opinion that it presented error; we granted Tom Nelson's because of granting Fulkerson's.

Fulkerson presents 12 points of error, but he briefs them together "in the interest of both clarity and brevity." Point 10, asserting error by the Court of Civil Appeals in not adopting the minority opinion, is without substance, hence it will not be considered further.

Fulkerson's application was granted on the first point, which urges that since both Nelsons admitted facts which established

a joint venture as a matter of law, there was no fact issue for the jury, and the trial court correctly entered judgment against Tom Nelson upon a finding of negligence against the minor son, Gene Nelson, who was driving the car in which both were riding.

All 10 remaining points raise, in some way or other, this question of joint venture.

According to 48 C.J.S., Joint Adventures, pp. 801 to 804, the doctrine of joint adventure originated with our American courts, and is not based on statute; as a legal concept it is therefore of recent origin and still in the process of development, without, as yet, any fixed boundaries. So it is not surprising that we have joint venture, joint adventure, and joint enterprise often used interchangeably and meaning the same thing.

A recent decision by this Court is Straffus et al. v. Barclay et ux., 147 Texas 600, 219 S.W. 2d 65. It holds that a joint enterprise exists where there is not alone a joint interest in the purpose of the enterprise but also an equal right, express or implied, to direct and control the conduct of each in operating the conveyance in question, citing El Paso Elec. Co. v. Leeper, Texas Com. App, 60 S.W. 2d 187; Ranking v. Nash-Texas Co., 129 Texas 396, 105 S.W. 2d 198; Garrett et al v. Brock, Texas Civ. App., 144 S.W. 2d 408, er. dism., cor. judg.; and Ener v. Gandy et ux., 138 Texas 295, 158 S.W. 2d 989. After stating these two requisites, 38 Amer. Jur., Negligence, p. 924, sec. 237, adds: "Each must have *some* voice and right to be heard in its control and management." (Italics ours.)

There is no dispute as to the joint interest of the Nelsons in the purpose of the trip in question. It was for both to do farm work to support the Nelson family of which they were members, Gene as a minor son.

On the element of joint control the testimony comes exclusively from the Nelsons, and from it we have concluded that as between Tom and Gene Nelson a joint control was established as a matter of law.

In the Straffus case, supra, Carl Straffus, 82 years of age and owner of the car, was the father of Hilda Straffus, 45, who was driving the automobile when it collided with the motor car driven by the Barclays. Hilda's mission was to buy some groceries and do her turn at cleaning up the church. The father

gave Hilda some assistance by going to the church and helping her move benches. On the issue of joint control, it was shown that on account of his age Carl Straffus never drove the car when someone else was available to drive it; that Hilda usually drove it for him; that on the occasion in question, and just before Hilda turned to the left and across the path being travelled by the the car of the plaintiff Barclay, she and Carl had some conversation about the advisability of attempting to cross at that time, and Carl agreed it was all right to do so. Also, we said that a verdict against Carl could have been sustained under the rule prevailing in this State that the mere presence of a car owner while his car is being driven by another is evidence that the driver is then his servant or agent; that is, as expressed in Rankin v. Nash-Texas Company, 129 Texas 396, 105 S.W. 2d 195, 197, the owner's presence in her own car being driven by a chauffeur is a fact from which the inference could reasonably be drawn that she had control over the driver, but it does not conclusively prove her right of control.

In the Rankin case the trial court found on an instructed verdict that the driver at the time of the accident was her agent, and not the agent of Nash-Texas Company. The Court of Civil Appeals affirmed. We held this was error, because the plaintiff introduced evidence which was "at least sufficient to support a finding" that at the time of the accident he was engaged in the work of Nash-Texas Company and under its control, rather than under the control of Mrs. Rankin. Briefly, that testimony was that the Rankin car stalled after it had stopped for a signal light; that Mrs. Ranking telephoned Nash-Texas Company, which sent a man to take the car to its garage; that it needed some repairs, which would require two or three hours to make; whereupon Mrs. Ranking requested to be driven to the nearby home of her sister, to stay until the repairs were completed; that Nash-Texas Company's chauffeur drove her to her sister's home; that when the repairs were done Mrs. Rankin telephoned Nash-Texas Company to send her car out to her sister's home, and she, Mrs. Rankin would bring the driver back to their place of business; that this was done as she requested; that on the way to the Nash-Texas Company's place of business Mrs. Rankin gave the negro driver two warnings, which he disregarded. One was that he had not properly closed one of the car doors; the other was to look out for a car then backing into the street just ahead, failure to heed which resulted in the three-way collision that terminated in this suit. With the facts in that attitude we held that there was an issue as to whether the chauffeur was engaged in the work of Nash-Texas Company and under its

control, rather than under the control of Mrs. Rankin, and so we remanded the cause for that issue to be determined.

Another case is El Paso Electric Co. v. Leeper, Texas Com. App., 60 S.W. 2d 187. Miss Leeper sued the Electric Company for personal injuries suffered by her when her mother's car, while being driven by one Nutter, her escort, left the slippery road and struck a transmission line pole belonging to and maintained by Electric Company, some 12 feet from the pavement upon which the Leeper car was being driven. The jury found both Nutter and Electric Company guilty of negligence; so Miss Leeper was given judgment by the trial court, which the Court of Civil Appeals affirmed. The Electric Company insisted that Miss Leeper and Nutter were on a joint enterprise at the time of the accident; at least, she had an equal right with Nutter to control the car; hence, a finding that the negligence of Nutter was a proximate cause of her injuries entitled Electric Company to a judgment. In brief, the testimony was that the mother often turned the car over to her daughter and Nutter; that she loaned it to them whenever the daughter requested; and that such was the arrangement on the night of the accident. The court said that this testimony showed that the car was loaned to the daughter and her escort, and that the daughter had as much control over the car as her escort; hence the jury finding of no joint enterprise was wholly without support in the evidence, and El Paso Electric Company was entitled to judgment as a matter of law.

Fulkerson urges that the issue of joint venture was established as a matter of law upon admissions made by Tom Nelson and his minor son, Gene, hence there was no necessity to submit the issue to the jury and Fulkerson did not waive it by not excepting to the charge and by not asking that the issue be submitted to the jury. Much of the discussion of this question consists of talk about ownership of the car as having a bearing on the question of control. That ownership does not necessarily decided the issue appears from this quotation from Straffus v. Barclay, supra, 147 Texas 600, 219 S.W. 2d 65, 69: "One might indeed imagine instances in which the nature of the enterprise itself, including its joint object, would result in the parties having an equal right of control. * * ." It is of some significance, at least, that in his charge the trial court stated one element of damage suffered by Tom Nelson was injuries and damage "sustained to *his* automobile," while in submitting elements of damage recoverable by Gene Nelson there is no reference whatever to damage to the automobile. Yet nobody

objected or otherwise complained of this assumption of Tom Nelson's ownership. (Italics ours.)

There is no evidence that Tom Nelson had abdicated his parental authority over his 19-year-old son, Gene. The minor son lived at home and worked with him to earn a living for the others in the family. In that relation the father had a right to the son's services and to collect his wages during minority as natural guardian of the son, and had control of his person, with the right of moderate restraint and correction to enforce his authority. Under the facts of this case Tom Nelson most certainly had the right to direct and control Gene in the operation of the automobile, with the right of reasonable punishment if Gene disobeyed him. See Arts. 4118, 4162, and 4163, Revised Statutes of 1925, and Art. 1142, Penal Code of Texas.

Joint control arose for Gene because he was driving the automobile with the consent of his father, who was present with him in the car.

We hold that joint venture between Tom and Gene Nelson was established as a matter of law, consequently any negligence of Gene in operating the automobile in question is imputed to Tom Nelson.

The jury found Tom Nelson, Gene Nelson and C. P. Fulkerson were all guilty of negligence in the event which resulted in this suit. All parties were both plaintiffs and defendants, so it follows that all of them are precluded from recovery because of contributory negligence.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

JUSTICES WILSON AND WALKER concur, but would prefer to treat this subject matter in terms of simple agency.

Opinion delivered January 25, 1956.