**RED BALL MOTOR FREIGHT, INC., et al.,**
**Appellants,**

v.

**Grady ARNSPIGER, Appellee.**

**No. 17343.**

Court of Civil Appeals of Texas.

Dallas.

Dec. 5, 1969.

Rehearing Denied Jan. 2, 1970.

---

Ralph H. Hartman, Jack Pew, Jr., Jackson, Walker, Winstead, Cantwell & Miller, Dallas, for appellants.

Bill M. McKnight, Larry B. Bach, McKnight, Dean & Bach, Dallas, for appellee.

CLAUDE WILLIAMS, Justice.

This is an appeal from a judgment awarding Grady Arnspiger damages for personal injuries sustained by him as a result of a collision between two automobiles. Arnspiger sued Red Ball Motor Freight, Inc. and Herman Clyde Sconce contending that the defendants were guilty of negligence which proximately caused serious personal injuries to him on December 31, 1967 when an automobile being operated by his daughter, Mrs. Helen Henderson, and in which he was riding as a passenger, collided with another automobile owned by one Patricia Ann Johnson. Plaintiff charged that Patricia Ann Johnson had stopped her automobile on the right hand improved shoulder of State Highway 121 near Lewisville, Denton County, Texas, and that Sconce, driving the Red Ball Motor Freight, Inc. truck had operated the same to the wrong side of the road and pulled in front of the Johnson

automobile, leaving his head lamps lighted, thus giving the appearance to one approaching that the truck was being operated on the wrong side of the road. He charged that his daughter attempted to avoid colliding with the truck and in doing so ran into the parked automobile.

Both defendants answered by asserting that plaintiff was riding as a passenger in his own automobile being driven by his daughter; that plaintiff's daughter was guilty of negligence in a number of instances which proximately caused the collision; that the parties were engaged in a joint venture whereby each had equal control and right of control of the operation of the vehicle and that by virtue of such facts plaintiff was precluded from recovery since the negligence of the daughter-driver was imputed to the plaintiff-passenger.

The case was tried to the court and a jury and in answer to special issues the jury found that Sconce was negligent in parking the Red Ball truck on the wrong side of the road with its lights burning and that such negligence was a proximate cause of the collision. The jury also found that Helen Henderson, the driver of plaintiff's automobile, failed to keep a proper lookout; that she failed to drive her automobile on the traveled portion of the road; that she failed to properly apply her brakes, and that each of said acts constituted negligence which was a proximate cause of the collision. The court, in its charge, submitted a definition of "joint mission" and asked the jury to find whether, on the occasion in question, Arnspiger and his daughter were engaged in a joint mission. The jury responded that they were not so engaged.

Both defendants filed a motion for judgment *non obstante veredicto,* the principal grounds therein asserted being that the record demonstrated, as a matter of law, that plaintiff and his daughter were engaged in a joint mission, and therefore the imputation of her negligence to plain-tiff precluded his recovery. It was further contended that the answers given by the jury to the negligence and proximate cause issues as to Sconce were not supported by any evidence and should be set aside. The trial court rendered judgment on the verdict for plaintiff against defendants in the sum of $12,566.79, being the amount of damages found by the jury.

Appellants bring forward thirty-two points of error which they have grouped and argued under two principal headings or grounds for reversal. In their first six points of error appellants contend that the contributory negligence of appellee's daughter in the operation of appellee's car in which he was riding as a passenger, must, as a matter of law, be imputed to appellee so that he cannot recover. By their points 7 through 32 appellants urge that the record is conclusive that the jury's findings of negligence and proximate cause against appellants are without any support in the probative evidence and must therefore be disregarded.

Proper resolution of both principal points before us requires a brief summary of the evidence which appears to be practically without dispute.

Grady Arnspiger, sixty-eight years of age, resided at Van Alstyne in Grayson County, Texas, on December 31, 1967. He was engaged in the business of farming. At that time he was the owner of a 1965 Chevrolet Impala automobile which was in good mechanical condition. His daughter, Mrs. Helen Henderson, lived in Dallas. Her automobile was apparently older than that owned by her father and not in as good mechanical condition. Mrs. Henderson's daughter and Mr. Arnspiger's granddaughter, was in the hospital at Sweetwater, Texas. Mrs. Henderson desired to go to Sweetwater, pick up her daughter, and bring her back to Dallas. Rather than drive her automobile to Sweetwater she drove to Van Alstyne to borrow her father's automobile for the

trip. Mr. Arnspiger decided to go with her. In this connection he testified:

"Q Now, on the occasion in question, sir, I believe you were riding in the automobile that was driven by your daughter?

A Yes, sir.

Q And her name is Helen Henderson?

A That's right.

Q Where were you and Mrs. Henderson going?

A We had started to Sweetwater.

Q And for what purpose?

A My granddaughter was in the hospital out there and they called us and said she could come home. So we started after her.

Q All right. She was able to come home and you all were going out to get her?

A Yes.

Q Was it your automobile that Mrs. Henderson was driving?

A Yes.

Q How come she was driving your car?

A Well, I always let her drive when she was with me because I always figured she was a good driver.

* * * * * *

Q Well, what I mean, Mr. Arnspiger, did Mrs. Henderson have a car?

A She had an old car but it wasn't in shape to drive that far.

Q And had you let her borrow yours to go out there?

A Yes, sir.

Q And were you going along for the ride?

A Yes, I was going along for the ride."

He testified they traveled to McKinney and took Highway 121 going in a westerly direction and proceeded on until they got near Lewisville, Texas where the accident occurred. It was early in the morning before daybreak and the weather was foggy and misty. There was a misting rain. It had turned cold and after the accident it started sleeting. Mrs. Henderson was driving with the windshield wipers on and she had the headlights turned on. He said, in this connection:

"Q How far ahead—it's your automobile and you are probably familiar with it—how far ahead on the morning of this accident were those headlights of your car able to illuminate objects on the highway?

A Well, I don't know. We always drive with our dimmers on.

Q Uh-huh.

A And if we had the brights on you could see farther down the road."

He testified the highway was straight; that he was awake and alert, and that he was paying attention to how fast his daughter was driving. He said she was going between 50 and 60 miles an hour before the accident. He testified:

"Q And had Mrs. Henderson slowed down any by the time she got up approaching the scene of the accident?

A She sure had. When we come by the roadside, and I asked her to slow down, and I very definitely remember her slowing down."

He testified that as they approached the scene of the accident he saw what he thought was an automobile or some kind of vehicle approaching from the opposite direction. He said they thought they were meeting an automobile or some kind of vehicle and that it appeared to be moving forward on the wrong side of the road.

He testified that he did not say anything to his daughter about the vehicle coming towards them but she did slow down the speed of the car in the last 100 or 150 yards. He testified he never did see the Cadillac automobile which was headed in the same direction they were going and stopped on the right side of the highway. All he could see was the headlights on the vehicle in front of him. He said that these lights did not blind him but that the lights of his car did not reveal the parked Cadillac. He did not remember anything about the accident other than he did remember meeting the car and the next thing he knew he was in the hospital.

Mrs. Henderson testified that her father's testimony concerning the reason for the trip was substantially correct. She said that her father had asked her to drive the car which he ordinarily did when they were together in a car. She said:

"Q Mrs. Henderson, did your father ask you to drive his car or did you ask to borrow his car to go get your daughter?

A Well, he told me I could borrow the car. And so he said that he would go along with me. And he said, 'You go ahead and drive.'"

Concerning the accident she testified that she was traveling in a westerly direction at a speed of about 60 miles per hour; that she first noticed the lights of the car or truck when she was "better than—around a half a mile" east of them; she could distinctly see two separate sets of lights and although the lights did not blind her or otherwise interfere with her vision, she became confused by them. It appeared to her that both vehicles were moving, that the truck was coming towards her at the time while the Cadillac had moved over to the right hand shoulder in an attempt to *avoid collision* with the truck. She reduced her speed to about 35 miles per hour and lowered her lights and pulled onto the shoulder behind the Cadillac. Finally, when she was about two lengths from the Cadil-lac, she realized it was not moving forward but stopped. At that time she did not try to pass it on the left, because she still thought the truck was moving towards her in that lane of traffic, so she hit her brakes and attempted to drive into the ditch on the right side of the Cadillac. Without leaving any skidmarks, she struck the rear of the Cadillac and knocked it into the front of the truck.

Before the accident appellant Sconce was traveling west, when he noticed the red brake signal lights of a disabled Cadillac, parked on the north shoulder, headed east. When he passed it, the woman driver flagged him down, and he went to an intersection, turned around, drove back, and parked his truck on the north shoulder, four feet in front of the Cadillac and facing it, leaving his lights on low beam in order to illuminate his work. He got out, lifted the hood of the Cadillac, and then got under the car and attempted to start it. He left on the truck five amber clearance lights which are on top of the cab, as well as its amber flashing lights which were located above the level of the Cadillac. The taillights and left directional signal were burning on the Cadillac. Both the Cadillac and the truck were parked parallel to the traffic on that highway and completely off the traveled portion of the road. He was still under the Cadillac when the collision occurred.

The owner and operator of the Cadillac did not testify.

In the light of these facts, which are not disputed, the principal question presented by this appeal is firmly fixed: Were Grady Arnspiger and his daughter, Mrs. Henderson, engaged in a common mission or joint enterprise at the time the collision occurred so that the undisputed negligence on the part of Mrs. Henderson in proximately causing the collision would be imputed to Mr. Arnspiger, as a matter of law, thus precluding any recovery by him of damages for the personal injuries sustained?

Appellee makes no contention nor does he argue against the jury finding of negligence and proximate cause against Mrs. Henderson. In fact, appellee's motion for judgment based upon the jury's verdict constitutes an affirmation that such findings were supported by competent evidence. Wilson v. Burleson, 358 S.W.2d 751 (Tex. Civ.App., Waco 1962, writ ref'd n. r. e.).

"The doctrine of imputed negligence, or imputed contributory negligence, is the rule in accordance with which the victim of a catastrophe is held, because of negligence on the part of another, to be precluded from recovering on account of the injury sustained by him. This doctrine rests on the agency, or express or implied authority, of each to act for all in respect to the control of the means or agencies employed to execute the common purpose or enterprise." 40 Tex.Jur.2d Negligence, § 118, p. 635.

Implicit in the meaning of the imputed negligence doctrine, joint mission or joint enterprise contemplates the joint prosecution of a common purpose under the circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute the common purpose. A joint enterprise exists where a driver and an occupant of an automobile have not only a joint interest in the object and purpose of the enterprise, but also where the occupant owner, as here, expressly or impliedly, retains the right to control the operation of the vehicle. Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117 (1959); Williamson Motor Co. v. Smith, 274 S.W.2d 191 (Tex. Civ.App., San Antonio 1954); 40 Tex.Jur. 2d, Negligence, § 120, pp. 636–637.

Thus, if it can be said that the evidence in this case affirmatively, and without dispute, demonstrates that on the occasion in question (1) Mr. Arnspiger and his daughter, Mrs. Henderson, had an equal right to direct and control the operation of the car and (2) each had a joint interest in the object of their trip, such would constitute a legal bar to appellee's recovery.

We think that the answer to the question posed must be that contended by appellants. The case presented is strikingly similar from a factual situation to that decided by our Supreme Court in Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65 (1949). That case involved a situation where a daughter was driving her father's automobile while he was a passenger therein. The father in that case did not usually drive a car because of his advanced age and when he and his daughter were together she usually did the driving. On the occasion of that accident the father and daughter had been to another town, where the daughter had bought groceries and aided in cleaning up the church of which she was a member. The accident occurred on the way home when the daughter made a turn into their driveway and became involved in a collision with an approaching car. The father testified that he told his daughter she had time to make the turn. The Supreme Court held that, as a matter of law, the father had at least an equal right with his daughter to control the operation of his automobile and so he was liable for damages to the occupants of the other automobile. Concerning the question of equal right of control the Supreme Court held that under the facts presented the father, being present and advising with the driver, his daughter, must have had an equal right of control with her. The court said:

"In fact Carl's admitted conduct in giving Hilda the benefit of his attention to the road and of his views about turning across it, is affirmative evidence from the best source that he had not relinquished all right of control. His advanced years and the fact that Hilda customarily did the driving, while perhaps indicating of itself a relationship of principal and agent, does not militate against Carl's right of equal control, should he elect to exercise it."

The opinion of the Supreme Court is peculiarly controlling of the situation here. The father, though permitting the daughter to drive, did not affirmatively yield his right of control of the automobile. To the contrary he on one or more occasions took overt action to direct the daughter in the manner of her driving, thus dispelling any idea of relinquishment of his right of control.

We conclude, therefore, that the testimony in this case demonstrates, as a matter of law, that appellee Arnspiger retained, as well as exercised, his right of control of the vehicle on the occasion in question so that the necessary element of joint enterprise is fixed. In addition to Straffus v. Barclay, supra, see El Paso Electric Co. v. Leeper, 60 S.W.2d 187 (Tex.Comm'n App. 1933); Johnston Testers, Inc. v. Taylor, 309 S.W.2d 117 (Tex.Civ.App., San Antonio 1958, writ ref'd n. r. e.); McCormick v. Stowe Lumber Co., 356 S.W.2d 450 (Tex.Civ.App., Austin 1962); and Nelson v. Fulkerson, 155 Tex. 298, 286 S.W.2d 129 (1956).

Concerning the second essential element of the doctrine of joint mission, that of common object, we think that the evidence establishes, as a matter of law, that appellee and his daughter had a joint interest in the object and purpose of the mission. Accordingly, we hold that there was no evidence of probative force to justify the jury finding that the parties were not engaged in a joint mission on the occasion of the collision. Again, the question is answered by the opinion of the Supreme Court in Straffus v. Barclay, supra, where the court held that the facts demonstrated affirmatively a mutuality of interest in the mission. In fact, we think that the facts adduced here go further than the facts shown in *Straffus* to illustrate a mutuality of interest. Both daughter and father were interested in the welfare of the daughter-granddaughter who was getting out of the hospital at Sweetwater and wanted to come home to Dallas. The nat-

ural family relationship and mutual interest in the welfare of the girl would point unerringly in the direction of joint mission as contemplated by law. See also Satterfield v. United Auto Supply, Inc., 424 S.W.2d 40 (Tex.Civ.App., Fort Worth 1968, affirmed Supreme Court 1969).

For the reasons assigned we sustain appellants' points 1 through 6 inclusive.

■ We turn now to our consideration of appellants' points 7 through 32, inclusive, which relate to the question of "no evidence" or "insufficient evidence" to support the jury's finding that appellant Sconce, acting in the course and scope of his employment for appellant Red Ball Motor Freight, Inc., was guilty of negligence which proximately caused the collision, in that he (1) parked his truck on the wrong side of the road and (2) that he parked his truck in such manner leaving the headlights on.

Art. 6701d, Sec. 121, Vernon's Ann.Civ. St. of Texas, provides that whenever a vehicle is parked or stopped upon a roadway or shoulder adjacent thereto, whether attended or unattended at night, such vehicle shall be equipped with one or more lamps which shall exhibit a white or amber light on the roadway visible for a distance of 500 feet to the front of the vehicle. The evidence in this case is that Sconce did comply with this statute with both white and amber lights burning on his truck which were visible to Mrs. Henderson from a distance of a half a mile away. It is our opinion that under the facts and circumstances as presented here the acts and conduct of appellant Sconce could not have been, as a matter of law, proximate causes of the collision in question. The case is ruled directly by East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613 (1949), where our Supreme Court held that, as a matter of law, the alleged negligence of defendant in leaving his truck parked against a street curb was not a proximate cause of plaintiff's injuries. In

fact, we believe that the evidence in this action is far stronger than that in *Loftis*. Here it is without dispute that Mrs. Henderson saw the lights of the truck at least half a mile away but became confused as to whether the vehicle was moving or not. Her confusion resulting in her turning to the right, at the last moment, instead of turning to the left, would have safely carried her around the two vehicles. We conclude that it is inescapable that the acts on the part of appellant Sconce could not have been the proximate cause of this collision and that the trial court should have sustained appellants' motion for judgment *non obstante veredicto*.

This court very recently, on October 24, 1969, decided Akin LaGard v. American Petrofina Co. of Texas, et al., 447 S.W.2d 448, which involved a very similar factual situation. We there followed the Supreme Court opinion in East Texas Motor Freight Lines v. Loftis, supra, and held that the mere act on the part of the truck driver in parking his truck at night under the conditions did not constitute the proximate cause of the collision. The cases cited by Chief Justice Dixon in *LaGard*, supra, amply support our opinion in this case.

We therefore hold that there was no evidence of probative force to support the jury's answers to the various issues concerning Sconce's alleged acts of negligence being a proximate cause of the collision. Even if it could be said that there was some evidence to support the jury's answers to these questions we would hold that such evidence is wholly insufficient.

We therefore sustain appellants' points 7, 8, 15, 16, 17, 24, 25 and 26. The other points are overruled.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing as against appellants.

Reversed and rendered.