NO. 07-07-0354-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



APRIL 16, 2008


______________________________



In the Interest of A.C., a child 


_________________________________



FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;



NO. DR-06A-019; HON. PHIL N. VANDERPOOL, PRESIDING


_______________________________



 Memorandum Opinion

_______________________________



Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 Crystal Chavez and Juan Cano appeal from an order terminating their parental
rights to their minor daughter, A.C. We affirm the trial court's order. 

 Cano Appeal

 Cano asserts various issues attacking the trial court's decision. However, we do not
find a statement of points itemizing the issues he intended to present on appeal. See Tex.
Fam. Code Ann. §263.405(i) (Vernon Supp. 2007); In re R.C., 243 S.W.3d 674, 675-76
(Tex. App.-Amarillo 2007, no pet.). Accordingly, we dismiss his appeal.

 Chavez Appeal

 Chavez raises three issues for us to consider. Through two, she attacks only two
of the four statutory grounds found by the trial court to warrant termination. Through the
third issue, she attacks the finding that termination was in the best interest of the child. We
overrule each. (1)

 As for the issues encompassing the statutory grounds for termination, we note that
only one ground need be established to support an order of termination. In re N.S.G., 235
S.W.3d 358, 363 (Tex. App.-Texarkana 2007, no pet.). Chavez having addressed on
appeal only two of the four grounds, she waived any complaint she had about the others. 
Thus, at least two grounds existed which supported the trial court's decision.

 As for the issue encompassing the best interest of the child, we note that the
evidence establishing a statutory ground for termination may also be considered when
assessing the best interest of the child. In re C.H., 89 S.W.3d 17, 28 (Tex. 2002). Also
noteworthy are the indicia known as the Holley factors. They too are helpful in assessing
the child's best interest. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976). Included
among them are: 1) the desires of the child, 2) the emotional and physical needs of the
child now and in the future, 3) the emotional and physical danger to the child now and in
the future, 4) the parental abilities of the individuals seeking custody, 5) the programs
available to assist those individuals to promote the best interest of the child, 6) the plans
for the child by those individuals seeking custody, 7) the stability of the home, 8) the acts
or omissions of the parent indicating that the existing parent/child relationship is not a
proper one, and 9) any excuse for the acts or omissions of the parent. In re P.E.W., 105
S.W.3d 771, 779-80 (Tex. App.-Amarillo 2003, no pet.). More importantly, one need not
prove that each Holley factor favors termination. Id. at 780. Nor is the list exhaustive. In
re C.J.F., 134 S.W.3d 343, 354 (Tex. App.-Amarillo 2003, pet. denied). Instead, there
must simply be enough evidence from which the factfinder can reasonably form a firm
conviction or belief that the child's best interest justifies termination. In re P.E.W., 105
S.W.3d at 780. 

 The record before us showed that Chavez, who was mildly retarded and had only
a ninth grade education, had been raised in a home where she was abused and neglected. 
Furthermore, her first pregnancy by Cano (who was in his twenties at the time) occurred
when she was fifteen years old. That child was stillborn. Other evidence illustrated that
Chavez eventually lived with Cano for a year and a half and that he physically threatened
and abused her. After one such instance of abuse, the Department of Family and
Protective Services (Department) became involved. And, though Chavez knew that she
was not to see Cano, she disregarded that.

 Next, after the birth of A.C., the child became sick with meningitis and RSV and had
to be hospitalized. Hospital personnel called the Department and reported their concerns
regarding Chavez' ability to care for the sick child. This resulted in the Department taking
custody of the infant. 

 Also appearing of record is the following evidence: 1) Chavez and A.C. were placed
in several different foster homes together but had to be removed due to the poor behavior
of Chavez (as exemplified by her effort to physically confront a foster parent), 2) the foster
parents had to constantly remind Chavez to do things for the care of the child, 3) Chavez
ran away after being placed with the PAC shelter in Amarillo and having A.C. removed
from her custody for holding the child by the ankles and swinging her, 4) Chavez returned
to Cano after she ran away, 5) she was next placed with a shelter in Wichita Falls where
she stayed for only one day before running away and being arrested for driving without a
license, 6) Chavez was placed in a shelter in Lubbock but was removed after she
disappeared for a time with an eleven-year-old child, 7) she failed on more than one
occasion to place children in safety seats, 8) Chavez had been stopped for driving a car
on the wrong side of the road when she had another infant with her and had drunk eight
bottles of "Bacardi," 9) she was resistant to learning from services offered by the
Department, failed to complete counseling and parenting classes, and had a poor support
system in her life, 10) she lacked the ability to parent and could not place the child's needs
above her own, according to psychological testing, 11) she had been arrested and jailed
for truancy at the time of trial, 12) Chavez only worked for three weeks at the only job she
ever had, 13) she gave birth to another child by another father at the time of trial and
intended to live with him and have him support her and the child, 14) neither Chavez' family
nor Cano's family had passed a home study, and 15) A.C., who was nearly two years old
at the time of trial, was doing well with her foster parents, which foster parents had an
interest in adopting her. 

 Evidence that a mother cannot provide a stable, safe, and secure environment
supports a finding that it is in the child's best interest to terminate a mother's parental
rights. See Hann v. Texas Dep't of Protective and Regulatory Services, 969 S.W.2d 77,
83-84 (Tex. App.-El Paso 1998, pet. denied) (upholding the termination because evidence
appeared of record illustrating that the parent could not provide such an environment). The
litany of evidence itemized above established Chavez' inability to provide such an
environment. Thus, the trial court had before it evidence upon which it reasonably could
have formed a firm belief or conviction that termination of the parental rights of Chavez was
in the best interest of A.C. 

 The order of the trial court is affirmed.


 Brian Quinn

 Chief Justice 
1. The State contends that Chavez failed to timely file a statement of points as well. We disagree. The
trial court's order of termination was signed on August 1, 2007, and the statement of points was not filed
marked until August 20, 2007. Yet, it was mailed to the clerk on August 16, 2007. Given the mailbox rule,
See Tex. R. Civ. P. 5 (providing that any document sent to the clerk in an envelope properly addressed and
stamped and is deposited in the mail on or before the last day for filing and received by the clerk not more
than ten days late shall be deemed filed in time), Chavez satisfied the fifteen-day rule specified in the Texas
Family Code. See Tex. Fam. Code Ann. §263.405(b) (Vernon 2002) (requiring the statement to be filed within
fifteen days of judgment). 



"> Evidence of Lack of Warning Devices

 Next, regarding the use or display of flags, lights and like objects, same were
purportedly necessary to warn others of the presence of the maintainer, according to
Caldwell. And, because such devices were not utilized or displayed, Sims' conduct
purportedly deprived Caldwell of sufficient warning to the alleged hazard. Yet, Caldwell
testified that 1) the accident occurred "[a] little before noon," 2) he had no "problem at all
. . . seeing" the maintainer, 3) he "was pretty far away when [he] first saw it," 4) the
maintainer "seemed like a long ways" away when he first spied it, and 5) he was "far
enough away" to "easily change directions and miss" it. This uncontradicted evidence
hardly evinces a lack of warning. Quite the contrary, it illustrates that he was aware of the
maintainer sufficiently in advance to "change directions . . . miss" it and, thereby avoid the
collision. And, because he had sufficient warning of same, logic and reason compels us
to hold, as a matter of law, that the failure to utilize or display devices which would provide
him warning was not a proximate cause of the accident. In short, the lack of warning about
an obstacle cannot, as a matter of law, create a question of fact regarding proximate cause
when the injured party admits he had ample warning of the obstacle. And, that was, and
is, the circumstance here.

 Location of the Maintainer

 As to the location of the road maintainer, the evidence purportedly creating a
question of fact consisted of Caldwell simply stating that it appeared or "looked" to him that
the vehicle "was in the right lane and that he needed to move." Yet, immediately before
uttering that statement, he said that he actually lacked knowledge about where the
maintainer "was parked in relation to the paved lanes of traffic." And, therein lies the
problem. 

 To be competent, summary judgment evidence must be specific, factual, direct, and
unequivocal. Brownlee v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984); Martinez v. IBP.,
Inc., 961 S.W.2d 678, 686 (Tex. App.--Amarillo 1998, pet. denied). That is why neither
conclusions, opinion, nor conjecture have probative value in the realm of summary
judgment. Cox v. Bancoklahoma Agri-Service Corp., 641 S.W.2d 400, 402 (Tex. App.--Amarillo 1982, no writ) (holding that summary judgment evidence must be in a form
admissible at trial and must state facts, not subjective opinions and conclusions). In short,
they cannot raise issues of material fact. Mercer v. Daoran, 676 S.W.2d 580, 583 (Tex.
1984) (holding that a legal conclusion is insufficient to raise an issue of fact in response
to a motion for summary judgment); Green v. Unauthorized Practice of Law Committee,
883 S.W.2d 293, 297 (Tex. App.--Dallas 1994, no writ) (stating that legal conclusions and
opinions are not competent summary judgment evidence and are insufficient to raise
issues of fact).

 Here, Caldwell admitted that he actually did not know the location of the maintainer
in relationship to the road. Lacking actual knowledge about that matter, his subsequent
statement regarding what the relationship "looked" like to him was less than unequivocal,
direct, and factual. Rather, the admission relegated his other utterances about the topic
to the status of mere opinion and conjecture. And, being relegated to that status, they
were insufficient to create a material question of fact. See Welch v. Doss Aviation, Inc.,
978 S.W.2d 215, 222 (Tex. App. - Amarillo 1998, no pet.) (holding that one must have
personal knowledge of the facts espoused before they can be competent summary
judgment evidence). Instead, what we have before us evincing the position of the
maintainer viz the lane of traffic is the undisputed deposition testimony of Sims. And, via
that testimony, he informed the trial court that 1) he pulled "straight" off the road (as
opposed to diagonally), 2) the shoulder was ten feet wide, and 3) only four feet of the
maintainer was on the shoulder while the remainder was off the shoulder. Sims having
pulled off the road and having left only four feet of the maintainer on the ten foot shoulder
while the remainder was off the shoulder, one can only deduce that the vehicle was not in
a lane of traffic but some six feet from the nearest lane. (3) Given this, we cannot say, as
Caldwell would have us do, that a material question of fact existed regarding whether the
maintainer was within a lane of traffic. Simply put, it was not in view of the record before
us.

 Conclusion

 The uncontradicted testimony illustrates that Caldwell 1) passed through a town
(approximately six miles from the accident scene) where he encountered "bad," "slick"
roads, 2) saw one maintainer "working the highway[]," 3) noticed that a portion of the
highway was down to one lane, 4) sped his vehicle up to 50 mph on a road top that had
snow and ice, 5) saw another maintainer in "plenty of time" to avoid it, 6) "figured, no
problem," 7) tried to change lanes, 8) hit ice, 9) lost control of his car, 10) opted not to use
his brakes or a lower gear to slow his car, 11) could not change his "vector" away from the
maintainer which sat on the shoulder several feet from the lane of traffic, and 12) prepared
for a collision. (4) In situations like that at bar wherein a driver of one vehicle struck another
which was visible and stopped outside the lane of traffic, the conduct of the driver of the
latter vehicle (even if negligent) is held not to be a proximate cause of the accident, as a
matter of law. East Texas Motor Freight Lines v. Loftis, 148 Tex. 242, 223 S.W.2d 613,
616 (Tex. 1949) (involving poor weather conditions and holding that the driver of the
parked yet visible vehicle could not reasonably foresee the collision); Red Ball Motor
Freight, Inc. v. Arnspiger, 449 S.W.2d 132, 138-39 (Tex. Civ. App.--Dallas 1969, no writ)
(involving the driver's confusion as to whether the parked vehicle was actually parked and
in her confusion attempted to evade it); LaGard v. American Petrofina Co., 447 S.W.2d
448, 450 (Tex. Civ. App.--Dallas 1969, writ ref'd. n.r.e.) (and cases cited therein); see Scott
v. Jost, 461 S.W.2d 686, 688 (Tex. Civ. App.--Amarillo 1970, no writ) (holding that the
driver who struck the parked vehicle was the cause in fact of the accident and that a
reasonably prudent person in the position of the driver of the parked vehicle would not
anticipate the collision). We conclude that this rule controls and disposes our situation. 
Consequently, the trial court did not err in granting summary judgment in favor of Sims and
entering judgment denying Caldwell recovery.

 Accordingly, we affirm the summary judgment entered below. 

 

 Brian Quinn 

 Justice 

Do not publish. 
1. The petition was subsequently amended several times. Furthermore, the live pleading mentioned
nothing of exemplary damages. Given that the amended document superceded its predecessor, Tex. R. Civ.
Proc. 65, and exemplary damages went unmentioned in the successor, Sims contention that the trial court
properly denied the claim for exemplary damages is moot. 
2. Sims testified that when traveling in the maintainer, the blade should be "up." So too did he state
that the blade was "up" when the accident in question occurred. We are cited to nothing which disputes this
or which illustrates that the blade was not in the "travel position" as suggested by Caldwell.
3. Review of the picture depicting the accident scene and road maintainer reveals that the blade of
the vehicle extended passed the wheels of same. Yet, the amount extending passed the wheels was far less
than the six feet needed to cause the blade to enter the nearest lane of traffic. 
4. In his live pleading, Caldwell averred that Sims was "'blading' snow and ice" prior to the collision. 
The assertion is one of fact not pleaded in the alternative. Consequently, it is an admission by Caldwell that
the road on which he drove 50 mph had, prior to the accident, snow and ice on it. See Withrow v. State
Farm Lloyds,, 990 S.W.2d 432, 436 (Texarkana 1999, pet. denied) (stating that assertions of fact in the live
pleading of a party not averred in the alternative are formal judicial admissions conclusively establishing the
fact admitted). And, because it is adverse to his contention that the roadway contained neither snow nor ice
prior to the location whereat he saw the second maintainer, it is competent summary judgment evidence
which binds him. Id.