**PHILLIPS OIL CO. v. LINN et al.**

No. 13554.

United States Court of Appeals
Fifth Circuit.

March 13, 1952.

Rehearing Denied April 14, 1952.

904

R. A. Wilson, Amarillo, Tex., for appellant.

John B. Ogden, Oklahoma City, Okl., for appellee.

Before HOLMES, RUSSELL, and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Both parties agree that the controlling issue in this case is whether the death of Earl Orville Linn, Jr., occurred under such circumstances as to impose upon The Phillips Oil Company liability for punitive or exemplary damages under the law of Texas. The basic provision for such liability is contained in Article 16, Section 26 of the Constitution of Texas, Vernon's Ann.St., reading as follows: "Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide."

As to the Workmen's Compensation Act, the Supreme Court of Texas commented in Ft. Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397, 408: "The Legislature realized it could not abolish the constitutional right to recover exemplary damages for a homicide due to 'gross neglect,' and was particular to exempt that class of damages from the purview of the act. R.S. art. 8306, § 5."

The section referred to, Section 5 of Article 8306, Revised Civil Statutes of Texas, 1925, reads in pertinent part as follows: "Nothing in this law shall be taken or held to prohibit the recovery of exemplary damages by the surviving husband, wife, heirs of his or her body, or such of them as there may be of any deceased employe whose death is occasioned by homicide from the wilful act or omission or gross negligence of any person, firm or corporation from the employer of such employe at the time of the injury causing the death of the latter. * * *"

There is no claim in this case of any "wilful act or omission"; so that the critical term is "gross neglect" or "gross negligence".

The meaning of "gross negligence" under the Texas law, may be best understood from quotations from two previous opinions approved by the Supreme Court of Texas in Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709, 712, 713:

" 'Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or persons to be affected by it. (Southern) Cotton Press v. Bradley, 52 Tex. (587) 600.' (We italicized 'conscious indifference.') * * *

" 'It is to be observed that the definition quoted uses the words "conscious indifference," thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: "The rule is that recovery is permitted, in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice."

8 R.C.L., p. 590. Mere indifference is not enough. The difference must be *conscious.* The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important.' "

 Further, to impose liability for exemplary damages under Texas law, the grossly negligent act must be the very act of the corporation itself, or as that principle is more fully expressed by the Texas Supreme Court in Fort Worth Elevators Company v. Russell, supra, 70 S.W.2d 397, 406:

"The Texas rule, reduced to its simplest terms, and applied to a case of gross neglect, means that the default for which punitive damages may be recovered must be that of the corporation, *that the grossly negligent act must be the very act of the corporation itself;* or, if the act is that of a *mere servant or employee as such,* then it must have been previously authorized or subsequently must be approved by the corporation.

"Our next inquiry will be as to what class, or classes, of corporate agents and servants, in so far as involved in the three cases before us, come within this rule in such manner as to make their corporate masters liable for exemplary damages.

"Formerly corporations could not be held liable in damages for torts. This rule, however, has been abandoned, and such liability is now unquestionable. This liability arises out of the acts of two different classes of corporate agents, namely, servants and vice principals, one of whom is charged with and performs the duties of a servant, and the other exercises the power or performs the duties of a master.

"Corporate liability for the negligent acts of a mere *servant or employee* rests upon the doctrine of *respondeat superior.* 18 Ruling Case Law, p. 786, § 247; 39 Corpus Juris, p. 1268, § 1451. The liability of the master for the negligent acts of his *vice principal* is placed upon very different grounds, namely, that the negligent acts of the *vice principal* are the *very acts of the corporation itself.* Hugo, Schmeltzer & Co. v. Paiz, 104 Tex. 563, 141 S.W.

518; Sweeney v. G. C. & S. F. Ry. Co., 84 Tex. 433, 19 S.W. 555, 31 Am.St.Rep. 71; 18 Ruling Case Law, p. 743, § 215; Commerce Cotton O. Co. v. Camp, 105 Tex. 130, 133, 145 S.W. 902.

"Using the term *'vice principal'* as embracing the four classes of corporate agents heretofore referred to: (a) Corporate officers; (b) those who have authority to employ, direct, and discharge servants of the master; (c) those engaged in the performance of non-delegable or absolute duties of the master; and (d) those to whom a master has confided the management of the whole or a department or division of his business, an examination of the authorities cited will disclose that the basic reason for holding a corporation liable in *actual damages* for the negligence of a *vice principal,* is identical with the requirement for the recovery of *exemplary damages* for gross neglect, namely, that the act must be the *act of the corporation,* instead of the act of a servant."

 Among the non-delegable duties of the master that case lists the following:

"Second. The duty to furnish reasonably safe machinery or instrumentalities with which its servants are to labor. * * *

* * * * * *

"Third. The duty to furnish its servants with a reasonably safe place to work."

Linn was working inside of a large water tank using a sand blaster for the purpose of removing scale and rust. The sand blaster was connected with a line marked "H. P. Air", meaning "High Pressure Air", when actually it was not an air line but was being used to transport sweet gas or fuel gas. The sparks from the sand blaster ignited the gas in the water tank, causing a violent explosion and instantly killing Linn and two other men.

The jury found the defendant guilty of gross negligence and awarded exemplary damages of $5,000.00 to the surviving widow, and $2500.00 each to the two minor children. The questions for review here were presented to the District Court by motion for directed verdict, by objections to the Court's charge, by requested instructions, and by motion for judgment not-

withstanding the verdict and alternatively for new trial.

■ On the issue of gross negligence, we refer to the testimony of the defendant's still supervisor and of its general still foreman:

B. T. Lloyd testified that he was still supervisor and that he had the supervision of five stills. He testified that he discovered the improper marking in November, 1947, and that he knew it was a gas line and had permitted it to remain mismarked as an air line.

"Q. You intended to, in the future to have this man re-stencil but it had never been re-stenciled until after the boy was killed? A. No, sir.

"Q. You had the intention of having it re-stenciled? A. Yes, sir.

"Q. For the information of the jury, will this soapstone mark or wash off? A. Well, yes, it will, out in the weather.

"Q. Now, tell the jury, if you will, about how long, if you know, had this, 'H. P. Air', been on that gas line? A. I wouldn't have any idea, but I would say two or three years.

"Q. The company permitted it to remain on there for two or three years. Had this gas line ever been used for an air line? A. I don't recall; I don't know.

"Q. If it had you don't have any knowledge of it? A. That's right."

E. W. Bearden testified substantially that he was a general foreman in the boiler refinery for the entire refinery, and that 1,000 to 1,100 men worked there and that they had twenty-eight stills and that in June, 1948, he had between 80 and 85 men working under him or under his supervision, and that he was the immediate supervisor of Mr. Lloyd; that he was with Mr. Lloyd in the fall of 1947 before the accident in June, 1948, and that the line was stenciled "H. P. Air." He stated that in the fall of 1947 he knew this line was a sweet gas line, and that he also knew it was marked "H. P. Air", and that he wrote on the line with soapstone "Sweet Gas" and that he saw the line immediately after the accident and that the soapstone marking had washed off, and that the "H. P. Air" marking had been on the line better than a year.

"Q. Did you go back and look at the time of the accident? A. Yes, sir.

"Q. Will you tell the jury whether or not if you hadn't known your writing was on there with this soapstone, if you could have seen that, if you had not known it? A. I couldn't have seen it.

"Q. The weather had washed it off? A. That's right.

"Q. Can you tell us, if you know, about how long this sign 'H. P. Air' had been on this line? A. I would estimate better than a year.

"Q. Now, then, could you tell us, if you know, about how long this gas line had been in there that caused this trouble? A. Eight or nine years."

The defendant, through its still supervisor and through its general still foreman, had knowledge that the gas line was mismarked "H. P. Air." The defendant and its supervisor and foreman were bound to foresee or anticipate that, because of it being mismarked, the line might be used as an air line with consequent disaster. Yet the mismarking continued for many months after actual knowledge thereof was brought home to responsible agents of the defendant, and it finally resulted in Linn's death.

As indicated in the case of Ft. Worth Elevators Co. v. Russell, supra, the defendant owed to its employee Linn the nondelegable duty to furnish him a reasonably safe place to work, and reasonably safe instruments with which to perform the service. See also Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409, 412; Lantry-Sharpe Contracting Co. v. McCracken, 105 Tex. 407, 150 S.W. 1156.

We think that the jury was authorized to find from the evidence that in the performance of that non-delegable duty, the defendant was guilty of an entire want of care and of a conscious indifference to the welfare of its employees; of gross negligence as understood in Texas law.

Finding in the record no error prejudicial to the appellant, the judgment is affirmed.

Affirmed.