SHEFFIELD DIVISION, ARMCO STEEL
CORPORATION, Petitioner,

v.

Mrs. Walter O. JONES, Jr., et al.,
Respondents.

No. A–9748.

Supreme Court of Texas.

Feb. 26, 1964.

Rehearing Denied April 15, 1964.

Clark, Thomas, Harris, Denius & Win-
ters, Mary Joe Carroll, with above firm,
Austin, Butler, Binion, Rice & Cook, James
E. Crowther and W. N. Blanton, Jr., with
above firm, Houston, for petitioner.

Hill, Brown, Kronzer, Abraham, Watkins & Steely, Houston, for respondents.

CULVER, Justice.

This suit was brought against Armco Steel Corporation and Robert McWhirter, its maintenance foreman, for exemplary damages as authorized by law where an employee's death is caused by homicide from the wilful act or omission or gross negligence of the employer at the time of the injury.[1] Walter Jones, Jr., while in the scope of his employment with Armco Steel Corporation was killed as the result of an explosion in December, 1959. His beneficiaries were paid compensation as provided by the Workmen's Compensation Act.

The trial court entered judgment against Armco on the jury's findings of gross negligence but granted the non obstante veredicto motion of McWhirter and entered a take-nothing judgment as to him. The Court of Civil Appeals held that the evidence supported the finding of gross negligence as against Armco, but reversed the judgment on other grounds and remanded the cause to the trial court. It affirmed the take-nothing judgment as to McWhirter. 369 S.W.2d 71.

We have concluded that the evidence offered on the trial of this case does not support the finding of gross negligence on the part of the employer and reverse and here render judgment in favor of the petitioner, Armco Steel Corporation.

Armco operates a steel mill in Harris County composed of separate plants, one of which is the coke plant. Coal is there heated under pressure and processed into coke. The gas emitted from that operation enters a primary cooler that extracts the greater part of the tars from the gas and is then conducted through large pipes into precipitators. The precipitator involved, which may be termed a gas purifying machine, is a large metal tank connected with two small tanks commonly called "ears," one on each side. Electrodes are suspended inside the precipitator which are charged with electricity and cause the tar remaining in the gas to be solidified and attracted to the precipitator walls. A precipitator is about 35 feet high and 20 feet in diameter. There was one of a bank of three precipitators of similar design in the area where the employees were working. The precipitator No. 2 in which the explosion occurred was installed in 1956. The other two had been installed some years earlier. Under normal operations raw gas is piped into the precipitator and clean gas is piped into the ear compartment. The purpose of this is to create a pressure in the ears to keep out the raw gas which will foul the insulator. When insulators become dirty they will sometimes crack or break. On the precipitator there is a vent from which the steam will exit. After precipitator No. 2 was installed, from the beginning there was difficulty with respect to gas coming into the precipitator after the inlet valves had been closed. Every second or third time of working on the precipitators there would be an indication of gas. This situation existed over a period of years and was brought to the attention of Mr. McWhirter on several occasions. One of the motor inspectors testified that, based on his experience over the years, the reason the gate valves would not close was due to the accumulation of tar in the grooves in which the gate sets and it is not possible to purge all of the gas by the use of steam while gas is continuing to leak through the valve. Ordinarily the precipitators were cleaned by the motor inspectors about once a week. On such occasions the motor inspectors would disconnect the electricity lead and then the ears and the precipitators would be steamed to purge them of gas. The steam also served to dampen the carbon deposits which otherwise when exposed to

1. See Art. 16, § 26, Constitution of the State of Texas Vern  Ann.St.; Art. 4673, Vernon's Ann.Civ.Stat.; Art. 8306, § 5, Workmen's Compensation Act.

the air had a tendency to smolder and blaze up. The by-products department was charged with the responsibility of closing the valves and shutting off the flow of gas into the precipitator and turning on the steam. When the steam was turned into the precipitator it would also pass into the ears. The fact that gas was present in the precipitator after it had been steamed was reported to the supervisors on many occasions. It was customary to resteam if the odor of gas was present and the motor inspectors had the right to call for this to be done. After the valves were closed and the steam had been applied the presence of gas could be fairly well discovered by looking at the steam. If it was not discolored the gas would have been cleared away.

On the morning of the explosion Mr. Jones, the deceased, and Mr. Phillips, both motor inspectors, were directed to check out precipitator No. 2. The electric current was shut off and the usual steaming operation conducted. Mr. McWhirter was told that gas was leaking into the precipitator and this fact was also reported to the by-products operator who had the valves checked to see if they were closed and the precipitator was resteamed. These two employees decided to clean the insulator in the east ear and then after the lunch hour to change the one in the west ear which appeared to be broken.

About one o'clock p. m., when they opened the door of the west ear, the odor of gas appeared to be about the same as it was in the morning. They did not call for the precipitator to be resteamed nor report that fact. They proceeded to clean out and remove the carbon deposits and after being engaged in that process for about 15 or 20 minutes the explosion occurred which resulted in the death of Jones and injuries to Phillips. Phillips testified that just prior to the explosion he saw sparks flash in front of him but he could offer no explanation as to what caused the sparks.

Mr. McWhirter and another foreman had from time to time assured the motor inspectors that the odor they smelled was not gas, but resulted from the fumes given off by the tar deposits and sometimes they used gas masks which were furnished by the company. No gas or explosion meters had ever been used in the area. After the explosion there was a flame coming out of the open gas line which was no longer connected to the left ear. This was the clean gas coming out of a gate valve which will not seal off the gas very long.

In this case the jury found that the valves to precipitator No. 2 were clogged with tar in sufficient amounts to render said valves defective in the use to which they were being put; that Armco failed to provide adequate valves to prevent gas from entering the precipitator No. 2 while work was being performed thereon; that there were inadequate venting facilities on precipitator No. 2, and that insulators on precipitator No. 2 were so located as to subject repairing motor inspectors to an unreasonable risk; and that all of these facts were known to foremen and supervisors and constituted gross negligence. So far as we note, the only defective or inadequate condition of the valves disclosed by the evidence was that prior to the accident in question tar gradually accumulated in the grooves making it increasingly difficult to completely close the valves.

An expert testified that a plug valve would be best adaptable for service in the precipitator rather than the tongue and groove type. But this latter type had been used for a good many years and the fact that Armco could have obtained a better valve on the market and failed to do so would not alone show gross negligence. Similarly, the facts that on other precipitators the venting facilities were more adequate and that insulators were arranged so as to be more accessible would not be sufficient to convict Armco of gross negligence.

There is no question here as to the rule of law applicable to cases of this character where exemplary damages are sought. In one of the later expressions by this court, Bennett .v. Howard, 141 Tex. 101, 170 S.W. 2d 709, we reaffirmed the definition stated in Missouri Pacific Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, namely that:

"Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or persons to be affected by it." (Emphasis added.)

Additionally the court quoted from 13 Tex. Jur., p. 241, § 133 as follows:

" 'In order that a recovery of exemplary damages may be *sustained*, the plaintiff must show, not merely that the defendant could have or ought to have foreseen and prevented the loss or injury of which the plaintiff complains, but that he acted intentionally or wilfully, or with a degree of "gross negligence" which approximates a fixed purpose to bring about the injury of which the plaintiff complains. The mental factor is also described in the reports by the terms "malice," "fraud," "oppression," "recklessness," and the like. Regardless of the expression which is used to describe it, the purpose or intention of the defendant is determinative of his liability for exemplary damages.' "

In the early case of Southern Cotton Press & Manufacturing Co. v. Bradley, 52 Tex. 587, the definition given by the trial court to the effect that gross negligence is a greater or a higher degree of negligence than ordinary negligence was held to be erroneous. The court went further to say that:

"Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise a presumption of a conscious indifference to consequences. Such indifference is morally criminal and if it leads to actual injury may well be regarded as criminal in law."

Also that:

"A mere act of omission or nonfeasance, to be punishable by exemplary damages, should reach the border-line of a *quasi*-criminal act of commission or malfeasance."

In Bennett v. Howard the defendant's field superintendent gave instructions to blow the well in under pressure and to run the tubing in under pressure. When he was reminded that that pressure was not customary he replied: "that is the way he wanted it done and he intended it done that way." It was generally known among the oil men about the gas pressure in that field and that wells were not brought in under pressure such as was done on that occasion. The evidence showed that it was very hazardous to run tubing under pressure and that it had been known to blow out. The Court of Civil Appeals relying on Morton Salt Co. v. Wells, Tex.Civ.App., 35 S.W.2d 454, affirmed 123 Tex. 151, 70 S.W.2d 409, held that a fact question was raised as to gross negligence, being of the opinion that negligence may be gross, not only when it is evidenced by an entire want of care, but even when the exercise of so slight a degree of care as to justify the conclusion that the party was indifferent to the welfare of others. The Supreme Court reversed saying that the testimony "when tested by the rule which has long prevailed in this State [we] find no basis for a recovery of exemplary damages." This court in that case, after citing and quoting liberally from Texas Pac. Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 98 A.L.R. 262; Ford v. Magnolia Petroleum Co., 118 Tex. 461, 17 S.W.2d 36, and Rowan v. Allen, 134

Tex. 215, 134 S.W.2d 1022, made the following pronouncement:

"We adhere to the rule announced in the cases above mentioned, and any rule to the contrary announced in other cases, in conflict therewith is hereby overruled."

The respondents do not disagree with the rule laid down in Shuford and other decisions,[2] but rely upon Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409. They request that we take note in that case of the facts relating to inspection, the "care" exercised by the employer in repairing the motor on the previous day and that other than shocking and stinging effects, there was no indication of any serious injury in the several years that the machine had been in use. If these facts are referred to for the purpose of showing that the court in that case held that although an entire want of care was not shown, nevertheless the company was guilty of gross negligence, then we say it has been effectively overruled by Bennett v. Howard, supra, but we do not so construe that opinion. After reciting the facts that the machine in use was so worn as to shock and sting on being touched; that the levers were not properly insulated; that some weeks prior to the accident the rubber casing had been burned back about three feet, and that the deceased was shocked and knocked down while operating the machine the day before he was electrocuted although the defendant's employee took the motor out and reinstalled it the same afternoon stating that it had been repaired.

The court said that "efforts to render it safe, if any were made, were but of the slightest character." Aside from that statement by defendant's employee that the motor had been repaired, the record clearly showed that no care had been taken at all. Obviously the motor had not been repaired and the court was justified, we believe, in concluding that there was an entire want of care in that respect as well.

The issue here is not whether there was negligence on the part of Armco, but whether the negligence was gross as defined by this court in the several cases above cited.

As said in Shuford, supra:

"* * * There can be no partial exercise of 'ordinary care.' It exists, as a degree, in completeness, or it is totally wanting in any given case. While in a given case, 'ordinary care' may not exist, yet there may exist at least slight care. * * *"

■ It may be said that the accident in this case was the result of negligence because the company did not use the care that was required to avoid the accident. But the absence of this care does not authorize the jury to levy damages upon the company beyond the limit of compensation for the injury actually inflicted. To justify that penalty there must have been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences. The same rule is followed in most other jurisdictions. See 98 A.L.R. 262.

Hinson v. Dawson, 244 N.C. 23, 92 S.E. 2d 393, 62 A.L.R.2d 806 holds that when an injury is caused by negligence any attempt to differentiate variations from slight to gross negligence is fraught with maximum difficulty. Wantonness, on the other hand, connotes intentional wrongdoing. Where malicious or wilful injury is not involved, wanton conduct must be alleged and shown to warrant the recovery of puni-

2. See also Magnolia Petroleum Co. v. Booth, 105 S.W.2d 356, Tex.Civ.App. (1937), wr. ref.; Nichols v. Texas Electric Service Co., 206 S.W.2d 860, Tex. Civ.App. (1947), wr. ref. n. r. e.; Abercrombie v. Scott, 267 S.W.2d 206 (1954), Tex.Civ.App., wr. ref. n. r. e.; Blair et al. v. Champion Paper Co., Tex.Civ. App., 147 S.W.2d 894, wr. ref.

tive damages. Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

The respondents cite us to certain automobile collision cases and others brought under the guest statute [3] which they say disclose recent developments in the field of "gross negligence" and give additional meaning and clarity to that term as theretofore defined.

In support of the reference. to recent developments in this field respondents cite the following cases: Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571; Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022; Higgenbotham v. O'Keefe, 340 S.W.2d 350, Tex.Civ.App., wr. ref. n. r. e.; Union Transports, Inc. v. Braun, 318 S.W.2d 927, Tex.Civ.App., wr. ref. n. r. e.; Goff v. Lubbock Building Products, 267 S.W.2d 201, Tex.Civ.App., wr. ref. n. r. e. The first two are brought under the guest statute. Both of these cases cite and apply the definition of gross negligence as given in the Shuford case.

In Bowman v. Puckett, the defendant was driving his automobile within the city limits of Weslaco on the principal north and south street through the city at such a rate of speed that after colliding with a large palm tree the automobile was so crushed and bent that neither the front nor the rear wheels would touch the ground. Additionally, it was shown that the defendant was driving at that rate of speed with knowledge of the fact that his brakes were defective.

In Rowan the finding of the lower courts of gross negligence was by this court reversed and judgment rendered.

In Higgenbotham the Court of Civil Appeals modified the judgment by ordering a remittitur. There was abundant evidence supporting the jury's finding that Higgenbotham was driving his automobile while intoxicated and the finding of gross negligence was supported by the evidence.

Union Transports was another case where remittitur was ordered and no exemplary damages were awarded. The court in that case refers to our decision in Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, and says we there held "that a combination of acts of ordinary negligence may, under certain circumstances, amount to gross negligence." The opinion does not stand for that proposition.

In Goff v. Lubbock Building Products the Court of Civil Appeals, after citing the rule laid down in Bennett v. Howard, held that the defendant was guilty of gross negligence so as to warrant the assessment of exemplary damages against the defendant-owner of the truck involved in the collision. The defendant employed as a truck driver a boy 16 or 17 years of age. The defendant was told that the boy had no driver's license and had little or no experience in driving a truck. The defendant was told on the first day that the brakes on the truck were defective; on the second day the attention of the defendant was again called to the defective condition of the brakes. Some brake fluid was added by one of defendant's employees which did not remedy the defects. Thereafter the matter was again reported to the defendant. Again the defendant was personally present and saw from the operation of the truck that the brakes would not hold. Later on that day the collision took place as a result of the defective brakes. There was an entire want of care on the part of the employer in that case aside from the

3. Art. 6701b, § 1. "No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

adding of the brake fluid, but at that time the cylinder was already three-fourths full of brake fluid and the condition of the brakes was twice called to the defendant's attention thereafter.

As pointed out by the respondents we have heretofore held with respect to Art. 6701b, § 1, that "heedlessness or reckless disregard of the rights of others" conveys the same meaning as does the term "gross negligence" as that term is defined in Missouri Pacific Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408 and other cases. Southern Cotton Press & Manufacturing Co. v. Bradley, 52 Tex. 587; Rowan v. Allen, supra, and Bowman v. Puckett, supra.

If, as insisted by the respondents, the rule has been somewhat less strictly applied to cases brought under the guest statute, which we do not concede, it is to be borne in mind that under that statute the damages are compensatory and not by way of punishment. On the other hand exemplary damages are awarded in addition to all compensatory damages and as a punishment against the wrongdoer for his quasi criminal action and as an example to others for the same reason that fines are imposed in strictly criminal cases. Piper v. Duncan, Tex.Civ.App., 131 S.W.2d 397, wr. ref. To some extent the distinction is recognized in Bernal v. Seitt, 158 Tex. 521, 313 S.W.2d 520 where the court said:

"Assuming what may well be the case, that there could be no recovery of *exemplary damages* against one in Ritter's position (none were awarded), it yet does not follow that Ritter may not be liable for *compensatory* damages for the gross negligence of the driver. Exemplary damages for gross negligence are awarded by way of civil punishment of—as distinguished from compensation by—a party who does harm with a callous state of mind. But the matter of charging a principal with compensatory damages for the gross negligence of an agent is simply one of how far the ancient rule of

*respondeat superior* is to apply. The law is correctly stated in Lusk v. Onstott, Tex.Civ.App., 178 S.W.2d 549, 553."

In that connection the respondents particularly emphasize our decision in Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, a guest statute case, and the result reached therein in holding that Lochausen was guilty of gross negligence. Despite some of the circumstances set out in the dissent in that case which would tend to show ordinary negligence, in evaluating that decision, we are necessarily bound by the reviewal of the evidence as set forth in the court's opinion, namely, that the defendant immediately outside the city limits of the City of El Paso was driving in heavy traffic at nighttime at a speed of 70 to 75 miles per hour following a road that he knew to be "a crooked, winding highway between the hills and the river there," in attempting to pass a large van-type trailer on a rather sharp curve of from 30 to 45 degrees and in so doing pulled in front of oncoming traffic and thus was forced to cut sharply to the right so closely in front of the truck that the truck driver was compelled to slow his speed; ran into the guard rail at the right-hand side of the highway, then entirely back across over the highway, climbed an embankment and turned completely over, a total distance of some 400 feet or more after having passed the truck. The court was of the opinion that under that statement of facts the jury was justified in finding that the defendant was guilty of gross negligence or as may be interpolated in the words of the guest statute of heedlessness and reckless disregard of the rights of others.

As pointed out above the precipitator, in which the explosion occurred, was installed three years before. Others of a similar design with the same type of valves and with insulators affixed in the same manner had been in use for some 15 years. All had been installed by an independent contractor. So far as the evidence discloses no complaints had been made of

the operation of any other precipitators than the one herein involved. During all these years while the precipitators were being cleaned weekly there had not been any explosion. The practice of steaming and resteaming had been a sufficient safeguard. As indicated the steam was introduced for the purpose of purging both the precipitators and the ears of gas and served to dampen the carbon deposits to prevent smoldering. The electric current was always cut off prior to the beginning of the cleaning operations. The duty of closing the valves and steaming the precipitators was assigned to and carried out by employees in the by-products department. The motor inspectors had the right to call for a resteaming if they smelled the odor of gas and frequently did so. Signs were posted to prevent smoking in the area. Safety meetings of employees were held regularly. In the light of 15 years' experience there would seem to be no reason to suspect that, if the precipitator had been resteamed after the east ear was cleaned in the morning and the carbon deposits dampened shortly before work commenced on the west ear in the afternoon when these two motor inspectors smelled the odor of gas, the explosion would have occurred.

Viewing the evidence most favorably to the respondents any negligence shown to have been committed by the managerial or supervisory employees of Armco appears to be passive or negative rather than positive or affirmative. The evidence fails to meet the requirement that there be an entire want of care so as to raise the belief that the acts complained of were the result of a conscious indifference to the rights or welfare of others. There does not appear to be any indication of wilfulness, wantonness or malice. We therefore hold that there is no evidence to support the findings of the jury that Armco was guilty of gross negligence.

The judgments of both courts are here reversed and judgment rendered that the respondents take nothing.