**Eddie KATZ, Appellant,**

**v.**

**SOUTHWESTERN SCRAP MATERIALS COMPANY et al., Appellees.**

No. 16884.

Court of Civil Appeals of Texas.

Dallas.

March 3, 1967.

Marvin G. Shwiff, Dallas, for appellant.

Edward E. Crowell, Jr., of Gardere, Porter & DeHay, Jerry Jones and John W.

Copeland of Thompson, Knight, Simmons & Bullion, Dallas, for appellees.

DIXON, Chief Justice.

Appellant Eddie Katz sued appellees Southwestern Scrap Materials Company and Fitzhugh-Penn Corporation for personal injuries sustained when he fell or jumped off of a ladder on premises owned by Fitzhugh-Penn Corporation and leased to Southwestern Scrap Materials Company. We shall hereafter refer to the appellees as Fitzhugh and Southwestern respectively.

The appeal is from a summary judgment in favor of appellees that appellant take nothing by his suit.

Appellant Katz is an electrician of eighteen years' experience. For about three years prior to his injury he had been engaged in business for himself as an electrical contractor.

Fitzhugh bought the property in 1955 and since that time has leased it to various tenants.

Southwestern leased the property in January 1963 under the terms of a written monthly rental agreement in the form of a letter from Fitzhugh to Southwestern which stipulates that "the metal building has no utilities and that if any are desired, they may be installed at your expense and further that you accept the building and property in its present condition and that no expense or maintenance will be required of the owners." It is undisputed that Southwestern accepted the terms of the agreement as set out in the letter.

Katz was familiar with the premises, having done work for Southwestern before. In fact, he had been employed by Southwestern to check the premises in connection with the renting of the premises in January 1963. He knew it was an old building.

On a day in April 1965 the lights in the warehouse went out and Southwestern employed Katz to find the trouble and remedy it. After checking the interior and exterior of the building Katz ascertained that some wires had become frayed from rubbing against the building and had to be replaced.

Katz himself did the work aided by one helper. He placed a ladder against the wall of the building about two feet to the side of the point where the defective wires were to be cut to enable them to be removed. It was eighteen feet from that point to the level part of the floor of the ramp on which the ladder rested. Katz climbed to a point where the wires were a little bit above eye level. He could have climbed higher, but chose that position on the ladder because it was comfortable. He leaned "way out" and pulled on the wires to determine whether they would break.

Having tested the wires Katz again leaned over and with his right hand was using a clipper to cut the wires. He was leaning heavily with his left hand on the eye bolt onto which the wires were tied. Katz weighed 183 pounds. He had cut two of the three wires and was cutting the third when the eye bolt on which he was leaning gave way. Katz lost his balance and either fell or jumped off the ladder, he is not sure which. He says that if he leaped off the ladder it was done instinctively to avoid becoming entangled with the ladder. However, he says that the ladder was stable and did not move at all when he either fell or jumped.

Both of Katz's legs were broken in the fall, his right leg in several places. He was hospitalized and afterward was bedridden at home for about four months.

Katz in his suit for damages alleges that his injuries were proximately caused by the negligence of appellees in failing to secure the eye bolt to the wall in a proper manner; in violating a city ordinance by failing to secure the eye bolt properly; in maintaining the eye bolt in an unsafe condition; and in failing to warn him that the eye bolt was not properly secured to the wall.

Appellant presents only one point on appeal in which he simply makes the broad assertion that there are genuine issues of material facts which should be passed on. The point is too general to require our consideration. Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931, 941; Crutchfield v. Associates Investment Co., 376 S.W.2d 957 (Tex.Civ.App., Dallas, 1964, ref. n. r. e.); Mooney Aircraft, Inc. v. Adams, 377 S.W.2d 123 (Tex.Civ.App., Dallas, 1964, ref. n. r. e.); Cotten v. Republic Nat'l Bank of Dallas, 395 S.W.2d 930 (Tex.Civ.App., Dallas, 1965, ref. n. r. e.). However, we gather from appellant's statement and argument under the above point that he relies on each of the alleged acts of negligence as a fact issue. Therefore, we shall consider the point.

Appellee Fitzhugh, the owner but not the occupier of the property, in its first counterpoint says that the court properly granted its motion for summary judgment because as a matter of law appellant has no cause of action against it.

In support of the above contention appellee Fitzhugh points out that (1) Southwestern, not Fitzhugh, had exclusive possession and control of the premises by virtue of the written rental agreement; (2) there was no reservation to the landlord, Fitzhugh, of any portion of the premises or of any duty or obligation to repair or maintain the premises; (3) under the express terms of the lease Southwestern accepted the premises in their condition as of the time of the execution of the rental agreement and assumed responsibility for all utilities; and (4) Fitzhugh had no knowledge of any defects located on the premises.

There is no evidence that Fitzhugh installed the eye bolt in question, or ever undertook to maintain it, or had any knowledge that it was improperly secured. Our Supreme Court in Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47, 150 A.L.R. 1369 (1943) said:

"The rule in this state and in most others is: 'Where there is no agreement by the landlord to repair the demised premises and he is not guilty of any fraud or concealment by failing to disclose hidden defects of which he has knowledge, the tenant takes the risk of their safety and the landlord is not liable to him or to any person entering under his title or by his invitation for injury caused by reason of their unsafe condition. 27 Tex.Jur. p. 354, Sec. 209. Churchwell v. Pure Oil Pipe Line Co., Tex.Civ.App., 289 S.W. 196; Perez v. Raybaud, 76 Tex. 191, 13 S.W. 177, 7 L.R.A. 620.' Morton v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239, 240.'"

See also Flynn v. Pan American Hotel Co., 143 Tex. 219, 183 S.W.2d 446 (1944); Morton, et al. v. Burton-Lingo Co., 136 Tex. 263, 150 S.W.2d 239 (1941); Jackson, et al. v. Amador, 75 S.W.2d 892 (Tex.Civ. App., 1934, error dism.); Churchwell v. Pure Oil Pipe Line Co., 289 S.W. 196 (Tex.Civ.App., 1926, no writ hist.); Perez v. Raybaud, 76 Tex. 191, 13 S.W. 177 (1890); Texas & P. Ry. Co. v. Mangum, 68 Tex. 342, 4 S.W. 617.

Appellant cites us to Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543 and Hall v. Medical Building of Houston, 51 Tex. 425, 251 S.W.2d 497. Neither of the above cases is in point.

The Genell case did not involve a suit against a landlord. The court did say by way of dictum that the manager and operator of an apartment house has the same status as that of a landowner so far as the duty toward an invitee is concerned. We believe that in making the statement the court had in mind a situation where an owner is in possession or control of the premises and the invitee is the invitee of the landlord. That is not the situation here. It is interesting to note that the Genell case tends to support the appellees' position in this case on another point: the question of foreseeability in regard to proximate cause.

The facts in the Hall case are quite different from the facts in this case. There

the owner had about 250 tenants, mostly doctors occupying offices. The owner retained control of elevators, hallways and the lobby. The plaintiff's injury occurred in connection with a door which opened from a hallway into the main lobby of the building. The proper maintenance of the door was the owner's, not the tenant's, responsibility.

Appellee Fitzhugh's first counterpoint is sustained.

In other counterpoints appellees assert that the trial court properly sustained their motions for summary judgment because (1) they breached no duty owed to appellant; (2) proximate cause was lacking as a matter of law; (3) appellant was guilty of contributory negligence; and (4) appellant voluntarily encountered a known risk.

██ Under the "no duty" doctrine an occupier of premises is required to keep his premises in a reasonably safe condition for his invitees. There is no duty to warn of an open and obvious danger, for the invitee can himself see and is charged with notice of such danger. It is when the danger is not open and obvious that the occupier of the premises owes a duty to warn the invitee of the danger if he, the occupier, knows about it, or in the exercise of ordinary care should know about it. The latter requirement is because of the duty of the occupier to inspect and to discover dangerous conditions. The burden rests on the plaintiff to negative "no duty". Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 378 (Tex. Sup.).

Applying the above principles we have no hesitancy in saying that Fitzhugh's plea of "no duty" is good. Fitzhugh was not in possession or control of the premises; was under no duty to repair or maintain them; was under no duty to inspect them; and appellant was not Fitzhugh's invitee.

██ We are also of the opinion that appellee Southwestern comes within the

"no duty" rule. There is no evidence that Southwestern knew that the eye bolt was improperly secured, if in fact it was. And we find no evidence that Southwestern should have known of such defect. The mere fact that there was a defect in the way the eye bolt was secured, if it is a fact, is not of itself proof of negligence. Texas & P. Ry. Co. v. Howell, 117 S.W. 2d 857, 860 (Tex.Civ.App., Eastland, 1938, dism. w. o. j.). Appellant himself says that he could not tell from looking at the eye bolt that it was not properly secured to the wall. He was familiar with the premises, having inspected the wiring before. In fact, he had been called in to locate and remedy the trouble on this occasion. He says that in ascertaining what the trouble was he inspected the wiring inside and outside the warehouse. In the performance of its duty properly to maintain the electrical wiring what more could Southwestern do than to employ the services of a trained, experienced electrician? It seems to us that if the defect escaped the notice of a trained electrician, it would not be reasonable to hold that Southwestern should have known about it.

██ We are of the opinion that appellees are correct when they say that as a matter of law proximate cause is lacking in this case—this for the reason that it must be held that appellees could not reasonably have foreseen that appellant would be injured in the manner shown by the undisputed facts. The eye bolt over the years had served the purpose for which it was intended: to hold the wires in place. It was not intended that the eye bolt should support the weight put upon it by a man weighing 183 pounds who was leaning "way out" pulling at the wires and cutting them. As we have said, appellant was an experienced electrician, well aware of the purposes for which eye bolts are used. He had been employed to come to the premises to check for defects in the electric wiring which caused the lights to go out. He had been there before. He knew it was an old building. How could appel-

lees be expected to anticipate that he would lean heavily on the eye bolt for support? *Houston Lighting & Power Co. v. Brooks,* 161 Tex. 32, 336 S.W.2d 603 (1960). See also *Davidson v. Methodist Hospital of Dallas,* 348 S.W.2d 400, 403 (Tex.Civ.App., Dallas, 1961, ref. n. r. e.) and cases there cited; *Oaxaca v. Lowman,* 297 S.W.2d 729 (Tex.Civ.App., El Paso, 1956).

Appellees make much of the fact that appellant testified that he does not know whether he jumped or fell from the ladder. Their view is that this evidence is equivocal and as such is no evidence at all, and will not support a finding of a causal relationship between the injuries sustained and any act or omission on the part of appellees. In support of their view we are cited to *Alamo Casualty Co. v. Stephens,* 259 S.W.2d 729 (Tex.Civ.App., Austin, 1953, ref. n. r. e.); *Williams v. Rearick,* 218 S.W.2d 225 (Tex.Civ.App., Amarillo, 1949, ref. n. r. e.); *Bonner v. Texas Co.,* 89 F.2d 291 (5th Cir. 1937); *Mayfield v. Aetna Life Ins. Co.,* 100 F.2d 199 (5th Cir. 1938). However, appellant also testified that whether he fell or jumped he was caused to do so by losing his balance due to the eye bolt coming loose. Though we are convinced that appellees cannot be held to have foreseen the consequences of the eye bolt's improper fastening to the wall, hence there could not be proximate cause, we are not prepared to say that the holdings in the above cited cases are applicable here by virtue of appellant's equivocal testimony as to whether he fell or jumped from the ladder.

■ Appellant says that the manner of securing the eye bolt to the building was in violation of a city ordinance, therefore was negligence per se. But liability arises in cases of negligence per se only if the violation is a proximate cause of the injuries in question. We have held that there was no proximate cause because foreseeability was lacking. The rules for determining proximate cause are the same

for negligence per se and common negligence, so we hold that even if there was a violation of an ordinance there was no liability on the part of appellees on that account. *Kenny v. El Paso Electric Co.,* 371 S.W.2d 777 (Tex.Civ.App., El Paso, 1963, ref. n. r. e.); *East Texas Motor Freight Lines v. Loftis,* 148 Tex. 242, 223 S.W.2d 613; 40 Tex.Jur.2d 460.

■ Moreover, for liability to be imposed for violation of a duty arising by statute or ordinance the purpose of the violated statute or ordinance must be to prevent the type of injury which plaintiff suffered. *Bazan v. Corpus Christi Transp. Co.,* 358 S.W.2d 235 (Tex.Civ.App., Eastland, 1962, no writ hist.). There is no evidence in this case that the purpose of the ordinance was to enable the eye bolt to be used safely as a support for a man weighing 183 pounds.

■ Appellee Southwestern says that it cannot be held liable because as a matter of law appellant voluntarily assumed the risk involved. We have held that appellees are absolved of liability under the "no duty" rule. The line of differentiation between "no duty" and assumed risk is thin indeed, as pointed out in the Halepeska case. In *Ellis v. Moore,* 401 S.W.2d 789, 792 (Tex.Sup.1966), our Supreme Court has said that in assumed risk there must be knowledge of the danger involved and appreciation of the particular danger. Assumed risk, unlike no duty, is an affirmative defense. *Halepeska v. Callihan Interests, Inc.,* 371 S.W.2d 368, 379 (Tex. Sup.1963). The burden is on the defendant to prove it. We think appellant should have known better than to lean his weight against an eye bolt whose purpose was merely to hold three electric wires in place But we cannot be sure that he did know or appreciate the particular danger involved in his doing so. We overrule appellee Southwestern's counterpoint on assumed risk.

Both appellees assert that there is no liability on their part because appellant

was guilty of contributory negligence as a matter of law. We agree.

Ordinarily contributory negligence is a fact question. But when the facts are undisputed and permit of only one reasonable inference contributory negligence becomes a matter of law. Appellant with eighteen years' experience is bound to have known that the eye bolt was intended merely to support the weight of three electric wires, not to support the weight of a heavy man. He testified that he was accustomed to lean on a building brace for support. There was no evidence that the eye bolt here was used to brace the building. Under the undisputed facts as heretofore stated we are of the opinion that he was guilty of contributory negligence as a matter of law.

Appellant's point on appeal is overruled. The judgment of the trial court is affirmed.

Affirmed.