Mrs. Gilbert Lee WOOLARD, a widow, et al., Plaintiffs-Appellees,

v.

**MOBIL PIPE LINE COMPANY et al.,
Defendants-Appellants.**

No. 72–2726.

United States Court of Appeals,
Fifth Circuit.

June 7, 1973.

Rehearing and Rehearing En Banc
Denied July 16, 1973.

B. Jeff Crane, Jr., Houston, Tex., William H. Tabb, Ronald L. Neill, Dallas, Tex., for defendants-appellants.

W. W. Watkins, Houston, Tex., William E. Townsley, Beaumont, Tex., John M. O'Quinn, Houston, Tex., for plaintiffs-appellees.

Before TUTTLE, THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

On the night of June 20, 1969, Gilbert Lee Woolard, an employee of appellant Mobil Pipe Line Company, was working at that company's Beaumont, Texas, metering station with two other men: Red Marsh, another Pipe Line Company employee, and Walton Goodwin, an employee of appellant Mobil Oil Corporation, which leased the land on which the metering station was located to Mobil Pipe Line, its wholly-owned subsidiary.[1] The men were removing water from a ten-inch liquid petroleum gas (LPG) pipeline running from Corsicana, Texas, through Pipe Line's Beaumont metering station and into the Mobil Oil refinery immediately adjacent to the metering station. The water was moving down the line under pressure, having been inserted to facilitate repairs on two sections of the line. During the repairs, the water had become separated into two slugs, the first of which arrived at the metering station at approximately 9:15 a. m. on June 20, 1969, and was removed without incident, by diverting it from the ten-inch LPG line into a four-inch and then a two-inch line and thence into an open ditch along the east side of the metering station.

The second slug of water arrived at the metering station at approximately 7:00 p. m. on June 20, and the three men began discharging it through the four- and two-inch lines into the open ditch. Directly behind this slug of water, the pipe was filled with extremely flammable LPG; in order to prevent the LPG from being discharged into the open ditch where it might ignite, the men at the metering station had to have

---

1. Pointing to the fact that the lease calls for a consideration of only one dollar per year, appellees urge us to treat the lease as a mere formality. We decline, however, to base our decision on this ground.

an accurate idea of the arrival time of the "interface" between the water and the LPG, so that they could divert the LPG either into the Mobil Oil refinery through the ten-inch line, or into Mobil Oil's flare system, which was available for the metering station's use in emergencies.

Mobile Pipe Line's dispatcher in Dallas had earlier told Marsh, the other Pipe Line employee at the metering station, that the estimated time of arrival of the water-LPG interface at the metering station was 12:35 a. m., June 21; but at 10:45 p. m. on June 20, while the second slug of water was discharging from the line, Marsh was told that the water-LPG interface could arrive at any time. The interface arrived at 11:25 p. m.; LPG was discharged into the atmosphere through the four-inch and two-inch lines and was ignited by some unknown source. The resulting explosion and fire took the lives of all three men in the metering station.

■ Woolard's parents and his widow, on behalf of herself and her children, filed this wrongful death and survival action in the court below. In response to special interrogatories, the jury found that Mobil Oil Corporation was negligent in failing to provide a flare system for the exclusive use of Mobil Pipe Line's metering facility, and that Mobil Pipe Line, Woolard's employer, was grossly negligent in several respects to be fully discussed below.[2] Judgment was entered against Mobil Oil Corporation for $125,000, and against Mobil Pipe Line Company for $100,000, and this appeal followed. We affirm the judgment against Mobil Oil Corporation, but reverse the judgment against Mobil Pipe Line Company.

## I.
### Negligence of Mobil Oil

Pointing to the fact that it leased the land on which the metering station was located to Mobil Pipe Line Company, Mobil Oil claims that it was a mere landlord without possession or control of the premises, and as such owed its tenant's employee, Woolard, no duty to use reasonable care to eliminate dangerous conditions at the metering station. Appellees, on the other hand, contend that the evidence established that Mobil Oil was a "joint venturer" with Mobil Pipe Line in the operation of the metering station, and that Mobil Pipe Line's negligence could therefore be imputed to Mobil Oil.

■ The Texas doctrine of "joint venture" makes each party thereto the agent of the other for purposes of tort liability; when the facts show a joint interest in the purpose of the enterprise and an equal right to control its conduct, the doctrine imposes vicarious liability upon a party for the other's negligence. Bonney v. San Antonio Transit Co., 160 Tex. 11, 325 S.W.2d 117 (1959); Straffus v. Barclay, 147 Tex. 600, 219 S.W.2d 65 (1949). In the case at hand, the jury found that Mobil Oil Corporation was negligent, in its own right, in failing to provide a flare system for the exclusive use of the metering station;[3] Mobil Oil argues that it could not have been negligent because in its role as landlord it owed no duty to Mobil Pipe Line's em-

2. It is without dispute that Woolard's employer, Mobil Pipe Line, is a subscriber to the Texas Workman's Compensation Act, Tex.Rev.Civ.Stat.Ann. Art. 8306, and that benefits under that Act have been paid to his survivors. Under Texas law, therefore, Woolard's survivors can recover from Mobil Pipe Line only if Mobil Pipe Line was grossly negligent. *Id.* § 5.

3. Mobil Oil's refinery flare system, whereby petroleum products could be safely disposed of, was available for the metering station's use in emergencies; there was no flare system for the exclusive use of the metering station. The testimony suggested that the refinery flare system was inadequate to handle the quantity of water that would have to have been discharged through it to insure the safe discharge of the LPG (App. 212; 369), and that the men in the metering station knew that the refinery flare system was inadequate for this purpose. (App. 369).

ployees. The doctrine of joint venture, however, is one of imputed, not actual, negligence; if one of two joint venturers is negligent, then the negligence of the other is immaterial to the imposition of vicarious liability upon him. A determination of whether Mobil Oil and Mobil Pipe Line were joint venturers in the operation of the metering station is therefore irrelevant to the question whether Mobil Oil itself breached a duty it owed to Woolard. Accordingly, we intimate no view as to whether the evidence showed that Mobil Oil and Mobil Pipe Line were joint venturers, and instead turn to the question whether Mobil Oil owed to Woolard a duty to use reasonable care to eliminate dangerous conditions at the metering station.

■ According to Texas law, a landlord who does not agree to repair the leased premises and who does not fraudulently conceal defects of which he has knowledge, is under no duty to either his tenant or the tenant's employee to correct an unsafe condition on the premises. Flynn v. Pan American Hotel, 143 Tex. 219, 183 S.W.2d 446 (1944); Yarbrough v. Booher, 141 Tex. 420, 174 S.W.2d 47 (Tex.1943); Daniels v. Shell Oil Co., 485 S.W.2d 948 (Tex.Civ.App.—Ft. Worth 1972, writ ref'd n. r. e.); Katz v. Southwestern Scrap Materials Co., 412 S.W.2d 685 (Tex.Civ.App.—Dallas 1967, no writ).[4] This rule, however, is subject to exceptions. If the lease is a mere sham employed by the "landlord" to fraudulently conceal his continued control over the premises, Texas courts impose upon him a duty owed to his tenant and to those entering under the tenant to use ordinary care to guard against dangerous conditions. Johnson v. Murry Co., 90 S.W.2d 920 (Tex.Civ.App.—Austin 1936, writ dism'd); Oriental Investment Co. v. Barclay, 25 Tex.Civ.App. 543, 64 S.W. 80 (1901, error ref'd). Likewise, the landlord is under a duty to use ordinary care to eliminate unsafe conditions on portions of the leased premises over which he has retained exclusive control, Brown v. Frontier Theaters, Inc., 369 S.W.2d 299 (Tex.1963), and in areas reserved for the common use or benefit of several tenants occupying the premises. Hall v. Medical Building of Houston, 151 Tex. 425, 251 S.W.2d 497 (Tex.1952); Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585 (Tex.1948).

■■ In each of these situations in which Texas courts impose a duty of ordinary care upon a landlord, the landlord, by virtue of his continued possession or control of the premises, is in a position to know of the defect and to take steps to correct it. Although our research has disclosed no Texas case involving the precise facts of the instant one, we conclude that Texas courts would impose a duty to use ordinary care upon a landlord who shares control of the leased premises with his tenant. Furthermore, our review of the record discloses sufficient evidence from which a jury could reasonably conclude that control over the Beaumont metering station was shared by Mobil Oil and Mobil Pipe Line. Mobil Oil could veto any of Mobil Pipe Line's proposed alterations in the metering station which Mobil Oil considered unsafe (App. 314); Mobil Oil employees had keys to unlock gates in the fence surrounding the metering station (App. 294–95), and new Mobil Oil executives were given a tour of the metering plant as part of their orientation (App. 291); Goodwin, the Mobil Oil employee who was killed in the explosion, had the authority to decide when to open and close valves during the purging operation (App. 343–52; 363). Accordingly, we hold that there was evidence from which the jury could properly decide that Mobil Oil owed to Woolard a duty to use ordinary care to eliminate dangerous conditions at the metering station.

■ Mobil Oil's contention that proximate causes was not established need

---

4. *But see* Fergeson v. National Bank of Commerce, 174 S.W.2d 1015 (Tex.Civ.App.—Galveston 1943, no writ).

not detain us long. Mobil Oil argues that the failure to provide an adequate flare for the exclusive use of the metering station had nothing to do with Woolard's death, because there was no proof that any of the men attempted to close the one valve necessary to divert the LPG into the refinery's flare system. But the jury could reasonably conclude that the valve was not closed because the LPG had vaporized and frozen it (App. 396–97), or because the men at the metering station knew that the refinery's flare system was inadequate under these circumstances (App. 366–69). In short, the failure to close the valve did not preclude a finding of proximate cause.

▇▇▇▇ Mobil Oil contends further that the trial court erroneously overruled its objections to evidence showing alterations in procedure and equipment made subsequent to the accident at the metering station. In particular, Mobil Oil objected to evidence showing that employees of Mobil Oil and Mobil Pipe Line jointly decided to leave unlocked the gates in the fence surrounding the metering station (App. 324), and to testimony concerning the method of discharging water and LPG that is now followed at Mobil Oil's new Spindletop facility. The general rule in both the Texas and the federal courts is that evidence of subsequent repairs or modifications is not admissible, owing both to the strong policy favoring remedial measures and to the danger that the jury may draw an unwarranted inference that the repairs or modifications are an admission of negligence. Roosth & Genecov Production Co. v. White, 152 Tex. 619, 262 S.W.2d 99 (Tex.1953); Eastern Airlines, Inc. v. American Cyanamid Co., 5th Cir. 1963, 321 F.2d 683. Such evidence is admissible, however, under a proper limiting instruction, to resolve a dispute between the parties as to whether the defendant exercised control over the premises in question. McCormick, Evidence § 275 (2d ed. 1972). One of Mobil Oil's primary contentions in the instant case, both in the court below and on this appeal, has been that it had no connection with the operation of the metering station. Evidence that its employees participated in the decision to leave the gates unlocked was therefore relevant to the disputed issue of control of the metering station premises; and, in our view, was properly admitted under the trial court's limiting instruction (App. 325). Evidence of procedures employed at the Spindletop facility could, however, have no bearing on that issue, because the Spindletop station is wholly separate from the Beaumont metering station and was not completed until after the occurrence in question. But a thorough study of the record convinces us that any error in the admission of this evidence was harmless.

II.

Gross Negligence of Mobil Pipe Line

In answer to special interrogatories, the jury found that Mobil Pipe Line Company was grossly negligent in five respects, each of which was a proximate cause of Woolard's death:

(1) In locating an office building on the premises of the metering station with window unit air conditioners, a water heater with an open flame, and a non-explosion-proof telephone

(2) In actively furnishing inaccurate dispatch information under the circumstances

(3) In discharging water and gas into the atmosphere

(4) In building and maintaining the four-inch line used to bleed off water followed by LPG

(5) In requiring Woolard, a novice at this type of operation, to work without providing him a flare system to be used exclusively by the metering station.

▇▇▇▇ We are compelled to reject these findings. The first three set out above were clearly insufficient predicates for awarding exemplary damages. First, even assuming that the presence of the air conditioners, water heater, and non-explosion-proof telephone was evidence of gross negligence on Mobil

Pipe Line's part, the record contains not a shred of evidence suggesting that any of these devices caused the explosion and fire. A Pipe Line employee testified that when he arrived at the metering station shortly after the explosion, some grass and a sample building on the premises were on fire, but the office building containing the air conditioners, water heater, and telephone was not burning. Moreover, appellees' expert witness testified that if these devices had been the source of ignition, the office building probably would have exploded. Apart from whether Mobile Pipe Line was grossly negligent in maintaining the equipment in the office building, then, its conduct in this respect was clearly not a proximate cause of Woolard's death.

■ Secondly, Mobil Pipe Line cannot, under Texas law, be held liable for the gross negligence, if any, of its dispatcher in "actively furnishing inaccurate dispatch information." Texas law permits the award of exemplary damages against a corporation only if the grossly negligent employee is a "vice principal," a category including: (1) corporate officers, (2) employees authorized to hire and fire, (3) employees performing "nondelegable" corporate duties, and (4) department or division managers. Fort Worth Elevators Co. v. Russell, 123 Tex. 128, 70 S.W.2d 397 (Tex.1934); LeJeune v. Gulf States Utilities Co., 410 S.W.2d 44 (Tex.Civ. App.—Beaumont, 1966, writ ref'd n. r. e.); Wooley v. Southwest Portland Cement Co., 5th Cir. 1959, 272 F.2d 906. There is nothing to suggest that the dispatcher had sufficient managerial authority to make him such a vice principal, and Mobil Pipe Line consequently may not be held liable for his alleged gross negligence.

■ Thirdly, the finding that Mobil Pipe Line was grossly negligent in "discharging water and gas into the atmosphere" is not a proper basis of liability. The discharge of the LPG is the very accident complained of. It was not the purpose of the purging operation to discharge water and LPG into the atmosphere; indeed, Mobil Pipe Line had taken measures (including an arrangement to use the refinery flare system and the employment of a dispatcher to warn the men of the arrival of the interface) to avoid such an accident. A finding that an accident occurred is by itself insufficient to impose liability upon a defendant for gross negligence or even for ordinary negligence. There must be a finding that the defendant's conduct caused the accident.

■ The last two jury findings set out above do not satisfy the strict Texas requirement for proof of gross negligence. In Sheffield Division, Armco Steel Corp. v. Jones, 376 S.W.2d 825, (Tex.1964), the Texas Supreme Court reaffirmed the definition of gross negligence first stated in Missouri Pacific Railroad Co. v. Shuford, 72 Tex. 165, 10 S.W. 408 (1888):

> Gross negligence, to be the ground for exemplary damages, should be that entire *want of care* which would raise the belief that the act or omission complained of was the result of a *conscious indifference* to the right or welfare of the person or persons to be affected by it. (Emphasis supplied).

In *Sheffield* the deceased was killed when an electrical spark ignited gas in a machine he had been ordered by his supervisor to inspect. The procedure established by the employer for removing gas from the machine before inspection had proven inadequate. The deceased's supervisor knew that gas was present when he ordered the deceased to inspect the machine, but assured the deceased that it was safe to begin the inspection nevertheless. The Supreme Court held that this evidence did not warrant a finding of gross negligence, pointing to the existence of admittedly inadequate safety measures. In the court's view, the "evidence failed to meet the requirement that there be an entire want of care so as to raise the belief that the acts complained of were the result of a conscious indifference to the rights or welfare of others. There does not ap-

pear to be an indication of willfulness, wantonness, or malice." 376 S.W.2d at 832.

In the wake of *Sheffield*, Texas Courts of Civil Appeals have decided several cases which illustrate the stringent requirements of the Texas concept of gross negligence. Armstrong v. Texas Power & Light Co, 399 S.W.2d 922 (Tex.Civ.App.—Tyler, 1966, writ ref'd n. r. e.), for example, arose out of the electrocution of a utility company lineman engaged in the removal of a charged wire from a utility pole near a highway. The job required that the wire be placed across the highway temporarily. In clear violation of company safety regulations, the deceased's foreman failed to post a flagman to stop oncoming cars; a car drove into or across the line, suddenly bringing it into fatal contact with the deceased. The Court of Civil Appeals held that this evidence failed to demonstrate that the foreman acted with a conscious disregard of the deceased's safety.

In Loyd Electric Co. v. DeHoyos, 409 S.W.2d 893 (Tex.Civ.App.—San Antonio, 1966 writ ref'd), an employee was killed while inspecting aircraft fuel pumps. The pumps were mounted on a stand, under which were placed drip pans to catch highly volatile aircraft fuel. In close proximity to the drip pans were electrical connections with clamps that were described at trial as not being of the safest variety available. A spark from the faulty connections ignited the fuel in the drip pans, killing the employee. The court held that, although the employer failed to use ordinary care to avoid such an accident, the evidence did not reveal an entire want of care and therefore there was no gross negligence.

Finally, in Thomas v. T. C. Bateson Co., 437 S.W.2d 386 (Tex.Civ.App.—Dallas 1969, writ ref'd n. r. e.), a construction worker fell four floors to his death when a cement buggy he was operating slipped off a ramp, which was only two inches wider than the wheel base of the buggy. The ramp was covered with wet concrete, and the employer had furnished no guard rails or other protective devices. The employee was a novice at this type of work, and had made only two trips up and down the ramp at the time of the accident. Nevertheless, the court, relying on *Sheffield, supra,* held that gross negligence had not been established. *See also* Stephens v. Dunn, 417 S.W.2d 608 (Tex.Civ.App.—Tyler, 1967, no writ) (statement by driver of truck which had struck and killed employee that "the son of a bitch is better off dead than he would be alive", held not to evidence intent or conscious disregard for the safety of the deceased workman).

As these cases indicate, the Texas view of gross negligence contemplates something just short of intentional wrongdoing. Indeed, the summary contained in 13 Tex.Jur. § 133 and quoted approvingly in *Sheffield, supra,* states that recovery of exemplary damages requires a showing, not merely that defendant could have or ought to have foreseen the injury, but that "he acted intentionally or willfully or with that degree of 'gross negligence' which approximates a fixed purpose to bring about the injury of which Plaintiff complains." The Texas standard demands both advertence to an unreasonable risk of harm to the plaintiff and an entire want of care (not merely a failure to take reasonable precautions) to avoid harm to the plaintiff.

Appellees cite only one instance in which a plaintiff in a case like the one at bar has carried the seemingly impossible burden imposed by this view of gross negligence.[5]   In Phillips Oil Co. v.

---

5. Appellees rely on several cases arising under the Texas guest statute, to support the verdict against Mobil Pipe Line. In *Sheffield, supra,* the Texas Supreme Court stated that such cases do not govern suits against employers for exemplary damages for the death of deceased employees, because exemplary damages are compensatory in nature in guest statute suits, but are considered punitive in nature in such cases as the instant one. 376 S.W.2d at 831.

Linn, 5th Cir. 1952, 194 F.2d 903, an employee was killed while operating a sandblasting machine attached to a hose labeled "H.P. Air" (meaning "high pressure air"). In fact, the hose contained high pressure *gas,* and a spark thrown by a particle of sand caused the gas to explode. The foreman of the deceased workman had known for some time that the hose was mislabeled, and prior to the accident the foreman had written "gas" on the line in soapstone. By the time of the accident, however, the soapstone marking had worn off (the foreman testified that he had expected it to wear off), leaving only the deceptive label "H.P. Air."

This court's holding that the foreman was grossly negligent was fully consistent with the Texas cases. As witnessed by his half-hearted effort to correct the label on the hose, the foreman recognized the almost inevitable consequences of attaching a sandblasting machine to the gas line. But by the same token, the precautions he took to correct the defective label—the soapstone marking which he knew would wear off—were not "precautions" at all. They were, in short, an "entire want of care."

*Phillips,* however, is not this case. True enough, the end of the four-inch line in the instant case extended only a few feet outside of the fence surrounding the metering station, a fence that was locked and that was difficult to climb. The water heater, telephone, and air conditioners in the office building were possible sources of ignition; and it was known that the dispatcher could give an estimate of the arrival time of the LPG that might be inaccurate by as much as thirty minutes. Moreover, the jury could reasonably have found that Woolard was a novice at the purging operation, and was required to do the work without having exclusive access to an adequate flare system. From all of this, the jury could reasonably conclude that Mobil Pipe Line Company failed to exercise ordinary care to avoid harm to Woolard. It may even be assumed that Mobil Pipe Line, through its managerial

personnel, knew that Woolard was being subjected to an unreasonable risk. But the obstacle to recovery of exemplary damages in this case is the fact that Mobil Pipe Line had taken measures to avoid such a tragedy by arranging for the use of the refinery flare system in emergencies and by employing dispatchers to calculate the estimated arrival time of the LPG at the metering station. However inadequate these steps may appear in retrospect, they are nevertheless sufficient to negate a finding of an entire want of care on the part of Woodlard's employer. Accordingly, the award of exemplary damages against Mobil Pipe Line Company is reversed.

In conclusion, we affirm the judgment against Mobil Oil Corporation, and reverse the judgment against Mobil Pipe Line Company.

Affirmed in part; reversed in part.